excess of the initial liability amount over $100,000.

(2)  The amount of initial liability remaining after application of paragraph (1) shall be reduced, to the extent applicable, in accordance with Section 4219(c)(1)(B) of ERISA.

(3)  The amount of initial liability remaining after application of paragraph (2) shall be reduced in accordance with Section 4225 of ERISA, if and to the extent that the Employer demonstrates that additional limitations under that Section apply.

Section 12.4.  SATISFACTION OF WITHDRAWAL LIABILITY.

(a)  Withdrawal liability shall be payable in installments, in accordance with Section 12.5. The total amount due in each 12-month period beginning on the date of the first installment, shall be the product of:

(1)  The highest rate (cents per hour) at which the Employer was obligated to contribute to the Fund pursuant to the Terminated Agreement(s) in the Plan Year in which the withdrawal occurred and in the preceding nine Plan Years, multiplied by

43

EXHIBIT NO. 2-44
PAGE NO. 6P

(2) The Employer's average contribution base units (hours) under the Terminated Agreement(s) for the three consecutive Plan Years, within the ten consecutive Plan Years, ending before the Year in which the withdrawal occurred, during which the Employer's contribution base units were the highest, except that the number and amount of installment payments due in the final year shall be reduced, if necessary, to assure that the total payments will not exceed the Employer's total amortized withdrawal liability.

(b) If, in connection with the Employer's withdrawal, the Trustees transfer benefit liabilities to another plan to which the Employer contributes, the Employer's withdrawal liability shall be reduced in an amount equal to the value of the unfunded vested benefits that are transferred, determined as of the end of the Plan Year preceding the withdrawal, on the same basis as the determination of the Plan's unfunded vested liability under Section 12.3.

44

EXHIBIT NO. 2-45
PAGE NO. 47

Section 12.5.   NOTICE AND COLLECTION OF WITHDRAWAL LIABILITY.

(a) Notice.   As soon as practicable after an Employer's complete or partial withdrawal, the Trustees will notify the Employer of the amount of the withdrawal liability and demand payment in accordance with the schedule described in subsection (f).

(b) Reconsideration.   No later than 90 days after the Employer receives the notice described in subsection (a), the Employer may:

(1) Ask the Trustees to review any specific matter relating to the determination of the Employer's liability and schedule of payments;

(2) Identify any inaccuracy in the determination of the amount of the Plan's unfunded vested benefits allocable to the Employer; and,

(3) Furnish any additional relevant information to the Trustees.

(c) The Trustees' Decision.   After a reasonable review of any matter raised in accordance with subsection (b) above, the Trustees will notify the Employer of their decision, the basis therefor, and the reason for any change in the

45

EXHIBIT NO. 2-46
PAGE NO. 68

determination of the Employer's liability or schedule of liability payments.

(d) Amortization Period. The Employer's withdrawal liability as determined under Section 12.3, shall be payable over a period of years necessary to amortize the amount of such liability in level annual installments as described in Section 12.4, calculated as if the first payment were made on the first day of the Plan Year following the Plan Year in which the withdrawal occurs and as if each subsequent payment were made on the first day of each subsequent Plan Year. In any event, if the amortization period as described above exceeds 20 years, the Employer shall only be liable for payments for the first 20 years. Actual payment of the liability shall commence as described in subsection (f) below.

(e) Arbitration. A dispute between an Employer and the Trustees concerning a determination of withdrawal liability shall be submitted to arbitration as provided in Section 4221 of ERISA, to be conducted in accordance with the rules of the American Arbitration Association not inconsistent with regulations of the Pension Benefit Guaranty Corporation. No issue

46

EXHIBIT NO. 2-47
PAGE NO. 49

concerning the computation of withdrawal liability may be submitted for arbitration unless the matter has been reviewed by the Trustees in accordance with Section 4219(b)(2) of ERISA and any Plan rules adopted thereunder.

(f)  Schedule of Payment.

(1)  Withdrawal liability shall be paid in equal quarterly installments. Notwithstanding the pendency of any review, arbitration or other proceedings, payment shall begin on the first day of the month that begins at least 15 days after the date notice of and demand for payment is sent to the Employer. Interest shall accrue on any late payment from the date the payment was due until the date paid, at the rate described in section (f)(2), below.

(2)  If, following review, arbitration or other proceedings, the amount of the Employer's withdrawal liability is determined to be different from the amount set forth in the notice and demand, adjustment shall be made by reducing or increasing the total number of installment payments due. If the Employer has paid more than the amount

47

EXHIBIT NO. 2-48
PAGE NO.    70

finally determined to be its withdrawal liability, the Trustees shall refund the excess with interest at the rate used to determine the amortization period under subsection (a).

(g) Default.

    (1) An Employer is in default on its with-drawal liability if:

        (A) (i) Any installment is not paid when due;

            (ii) The Trustees have notified the Employer of its failure to pay the liability on the date it was due; and,

            (iii) The Employer has failed to pay the past-due installment within 60 days after the Trustees send the late payment notice.

        (B) Such Employer is delinquent in pay-ment of contributions under Plan rules as of the date of withdrawal;

        (C) Such Employer is involved in a bank-ruptcy, insolvency or similar credi-tor settlement proceedings including appointment of a receiver; executes a general assignment for the benefit of

48

EXHIBIT NO. 2-49

PAGE NO. 7l

creditors; or undertakes any other nonjudicial creditor settlement any time after the date of the Employer's withdrawal; or,

(D) The Employer engages in any other event which the Trustees determine indicates a substantial likelihood that the Employer will be unable to pay its share of withdrawal liability.

(2) Interest shall be charged on any amount in default from the date the payment was due to the date it is paid, at an annual rate equal to the prevailing rate for comparable obligations charged by the Indiana National Bank on the first day of the calendar quarter preceding the due date of the payment. For each succeeding 12-month period that any amount in default remains unpaid, interest shall be charged on the unpaid balance (including accrued interest) at the prevailing rate in effect on the anniversary date of the date as of which the initial interest rate was determined.

49

EXHIBIT NO. 2 - 5D
PAGE NO. 72

(3) In the case of a default on withdrawal liability, the Trustees may require immediate payment of some or all installments that would otherwise be due in the future.

(h) In any suit by the Trustees to collect withdrawal liability, including a suit to enforce an arbitrator's award and a claim asserted by the Trustees in an action brought by an Employer or other party, if judgment is awarded in favor of the Trustees, the Employer shall pay to the Fund, in addition to the unpaid liability and interest thereon as determined under subsection (g)(2), liquidated damages equal to the greater of

(1) The amount of interest charged on the unpaid balance; or,

(2) 20 percent of the unpaid amount awarded.

The Employer shall also pay the Fund's attorney fees and all costs and expenses incurred in the action.    Nothing in this paragraph shall be construed as a waiver or limitation of the Trustees' right to seek any other legal or equitable relief.

(i) Prepayment.  An Employer may prepay all or part of its withdrawal liability, without penalty,

50

EXHIBIT NO. 2-51
PAGE NO. 73

provided however, that such withdrawal liability is not limited to the amount of prepayment where:

(1)  The arbitrator's decision concerning withdrawal liability warrants adjustment in such amount, or

(2)  The plan terminates by mass withdrawal as described in Section 12.9.

(j)  Other Terms and Conditions.  The Trustees may require that an Employer post a bond, or provide other security for payment of its withdrawal liability, if

(1)  The Employer's payment schedule would extend for longer than 18 months;

(2)  The Employer is or becomes the subject of a petition under the Bankruptcy Code, or similar proceeding under state or other federal laws; or,

(3)  Substantially all of the Employer's assets are sold, distributed or transferred out of the jurisdiction of the courts of the United States.

The Trustees, in their discretion, may bring suit to require or enforce such bond or security.  In any such suit, if judgment is awarded in favor of the Trustees, the Employer

51

EXHIBIT NO. 2-52
PAGE NO. 74

shall pay all the Fund's costs and attorney fees incurred in the action.

Section 12.6.   PARTIAL WITHDRAWAL OF A CONSTRUCTION EMPLOYER.

(a)  Definition.   A partial withdrawal occurs on the last day of the Plan Year in which the Employer's work-mix within the craft and area jurisdiction of a Collective Bargaining Agreement under which it is obligated to contribute shifts, with the result that no more than an insubstantial portion of such work remains covered under the Plan.   An Employer will be deemed to have partially withdrawn if the total number of hours for which the Employer is obligated to contribute in a Plan Year is:

(1)  Less than 30 percent of such Employer's hours for the previous Plan Year; and

(2)  Less than 30 percent of the Employer's total work level (measured by number of man hours) of the type that is within the craft and area jurisdiction of the Collective Bargaining Agreement under which the Employer is obligated to contribute.

(b)  Total Amount.   The amount of an Employer's liability for a partial withdrawal shall be its liability calculated under Section 12.3, as if

52

EXHIBIT NO. 2-53

PAGE NO. 73

the Employer had withdrawn completely on the date of the partial withdrawal, multiplied by a fraction that is one minus a fraction:

(1) The numerator of which is the total hours for which the Employer was obligated to contribute for the Plan Year following the Plan Year in which the Employer withdrew; and

(2) The denominator of which is the total hours for which the Employer was obligated to contribute for the Plan Year prior to the Plan Year in which the Employer with-drew.

(c) Annual Payment. The total amount due in a 12-month period with respect to a partial with-drawal shall be the amount determined as if for a complete withdrawal, multiplied by the frac-tion described in subsection (b).

Section 7. PARTIAL WITHDRAWAL OF A NONCONSTRUCTION EMPLOYER.

(a) Except as otherwise provided in this section, there is a partial withdrawal by a Non-Construction Employer on the last day of a Plan Year if, for such Plan Year:

(1) There is a 70 percent contribution decline; or,

53

EXHIBIT NO. 2-54
PAGE NO. 76

(2) There is a partial cessation of the Employer's contribution obligation.

(b) (1) For purposes of subsection (a)(1), there is a 70 percent contribution decline for any Plan Year, if during each Plan Year in the 3-year testing period, the hours of work on the basis of which the Employer is obligated to contribute do not exceed 30 percent of such hours for the high base year.

(A) For purposes of paragraph (b)(1):

(i) The term "three-year testing period" means the period consisting of the Plan Year and the immediately preceding two Plan Years.

(ii) The number of hours referred to in paragraph (b)(1) for the high base year is the average number of such hours for the two Plan Years for which the hours were the highest within the five Plan Years immediately preceding the beginning of the three-year testing period. The pertinent hours for Plan Years

54

EXHIBIT NO. 2-55
PAGE NO. 77

ended by December 31, 1978,
shall be deemed to be equal to
the Employer's hours for the
Plan Year ended December 31,
1979.

(2) There is a partial cessation of the Em-
ployer's contribution obligation for the
Plan Year if, during such year:

(A) The Employer permanently ceases to
have an obligation to contribute
under one or more but fewer than all
Collective Bargaining Agreements
under which the Employer has been
obligated to contribute, but the
Employer (i) continues to perform
work in the jurisdiction of the
Collective Bargaining Agreement, of
the type for which contributions were
previously required or (ii) transfers
such work to another location; or,

(B) The Employer permanently ceases to
have an obligation to contribute
under the Plan with respect to work
performed at one or more but fewer
than all of its facilities for which
the Employer is or was obligated to

55

EXHIBIT NO. 2-56
PAGE NO. 78

contribute, but the Employer con-
tinues to perform work at such facil-
ity or facilities of the type for
which the obligation to contribute
ceased.    A facility shall mean a
place of business where work is
performed by a group of Employees.

(3)  For purposes of paragraph (b)(2), a cessa-
tion of obligations under a Collective
Bargaining Agreement shall not be con-
sidered to have occurred solely because
one Agreement that requires contributions
to the Fund has been substituted for
another such Agreement.

(c)  Effective Dates.

(1)  Subsection (a)(1) above shall not apply to
any Plan Year prior to January 1, 1983.

(2)  Subsection (a)(2) above shall not apply to
any cessation of contribution obligations
occurring before April 29, 1980.

(d)  Partial Withdrawal -- Amount and Payment

(1)  The amount of an Employer's liability for
a partial withdrawal under subsection
(a)(1) shall be its liability calculated
under Section 12.3, as if the Employer had
withdrawn completely on the last day of

.56

EXHIBIT NO. 2-57
PAGE NO. 79

the first year of the three-year testing period, multiplied by a fraction that is one minus a fraction:

(A) The numerator of which is the total hours for which the Employer was obligated to contribute for the Plan Year following the three-year testing period; and,

(B) The denominator of which is the average of the annual total hours for which the Employer was obligated to contribute for each of the five Plan Years immediately preceding the three-year testing period.

(2) The amount of an employer's liability for a partial withdrawal under subsection (a)(2) shall be its liability calculated under Section 12.3, as if the Employer had withdrawn completely on the date of the partial withdrawal, multiplied by a fraction that is one minus a fraction:

(A) The numerator of which is the total hours for which the Employer was obligated to contribute for the Plan Year following the Plan Year in which the partial withdrawal occurred, and

57

EXHIBIT NO. 2-58
PAGE NO. 80

(B) The denominator of which is the average of such hours for each of the five Plan Years immediately preceding the Plan Year in which the partial withdrawal occurred.

(3) The total amount due in a 12-month period with respect to a partial withdrawal shall be the amount determined as if for a complete withdrawal, multiplied by the fraction described in paragraph (1).

Section 12.8. LIABILITY ADJUSTMENTS AND ABATEMENT.

(a) Successive Withdrawals. If, after a partial withdrawal, an Employer again incurs liability for a complete or partial withdrawal, the liability incurred as a result of the later withdrawal(s) shall be adjusted to the extent necessary to avoid duplication of liability.

(b) Non-Construction Employers -- Abatement of Partial Withdrawal Liability. The liability of a Non-Construction Employer for a partial withdrawal under section 12.7(a)(1) shall be reduced or eliminated in accordance with Section 4208 of ERISA.

(c) Abatement After Renewed or Increased Participation. If an Employer that has withdrawn from the Plan later renews the obligation to con-

58

EXHIBIT NO. 2-59
PAGE NO. 81

tribute, or if an Employer that has partially withdrawn later increases the share of its work in the craft and area jurisdiction of the Collective Bargaining Agreement under which the Employer is obligated to contribute so that the portion of such work that is covered under the Plan is determined by the Trustees to be more than insubstantial, the unpaid balance of the Employer's liability incurred on account of the earlier withdrawal shall be reduced in accordance with rules adopted by the Trustees pursuant to regulations of the PBGC.

Section 9.  MASS WITHDRAWAL.

Notwithstanding any other provision of this Article, if all or substantially all Contributing Employers withdraw from the Plan pursuant to an agreement or arrangement, as determined·under ERISA Sections 4209 and 4219 (c)(1)(D), the withdrawal liability of each such employer shall be adjusted in accordance with those ERISA sections.

Section 10.  NOTICE TO EMPLOYERS.

(a)  Any notice that must be given to an Employer under this Article or under Subtitle E of Title IV of ERISA shall be effective if given to the specific member of a commonly-controlled group that has or had the obligation to contribute to the Fund.

59

EXHIBIT NO. 2-40
PAGE NO. 82

(b)  Notice shall also be given to any other member of the controlled group that the Employer identifies and designates to receive notices hereunder, in accordance with a procedure adopted by the Trustees.

Section 12.11.  WITHDRAWAL LIABILITY COMMITTEE.  The Trustees shall establish a Withdrawal Liability Committee consisting of at least one Union Trustee and one Employer Trustee.  The Committee shall have the authority to take whatever actions are required to implement the provisions of this Article XII.

## ARTICLE XIII

### Miscellaneous Provisions

Section 13.1.  NON-REVERSION.  Under no circumstances shall any portion of the corpus or income of the Fund, directly or indirectly, revert or accrue to the benefit of any Contributing Employer or the Union.

Section 13.2.  TERMINATION OF INDIVIDUAL EMPLOYERS.  An Employer shall cease to be a Contributing Employer within the meaning of this Agreement and Declaration of Trust when the Employer is no longer obligated by the terms of any agreement or any applicable labor-management relations law to make contributions to this Pension Fund.

60

EXHIBIT NO. 2-41
PAGE NO. 83

Section 13.3.  RIGHTS OF EMPLOYEES AND OTHERS.  No Participant or any person claiming by or through such Participant, including his family, dependents, beneficiary and/or legal representative, shall have any right, title or interest in or to the Pension Fund or any property of the Pension Fund or any part thereof except as may be specifically determined by the Trustees.

Section 13.4.  ENCUMBRANCE OF BENEFITS.  No monies, property or equity of any nature whatsoever, in the Pension Fund, or contracts or benefits or monies payable therefrom, shall be subject in any manner by a Participant or person claiming through such Participant to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same subject thereto shall be null and void.

Section 13.5.  SITUS.  The District of Columbia shall be deemed the situs of the Pension Fund created hereunder, and the situs for the administration of the Pension Fund within the meaning of Section 502(e)(2) of the Employee Retirement Income Security Act (ERISA).  All questions pertaining to validity, construction and administration shall be determined in accordance with ERISA and the laws of the District of Columbia.

Section 13.6.  CONSTRUCTION OF TERMS.  Wherever any words are used in this Agreement and Declaration of Trust in the masculine gender, they shall be construed as though

61

EXHIBIT NO. 2-62
PAGE NO. 84

they were also in the feminine or neuter gender in all situations where they would so apply, and wherever any words are used in this Agreement and Declaration of Trust in the singular form, they shall be construed as though they were also used in the plural form in all situations where they would so apply, and wherever any words are used in this Agreement and Declaration of Trust in the plural form, they shall be construed as though they were also used in the singular form in all situations where they would so apply.

Section 13.7. CERTIFICATION OF TRUSTEES' ACTIONS. The Chairman and Co-Chairman of the Trustees may execute any certificate or document jointly on behalf of the Trustees to certify to or implement any actions taken by the Trustees, and such execution or action shall be deemed execution or action by all the Trustees. All persons having dealings with the Pension Fund or with the Trustees shall be fully protected in reliance placed on such duly executed document.

Section 13.8. NOTIFICATION TO TRUSTEES. The address of each of the Trustees shall be that stated on the signature page of this Agreement and Declaration of Trust. Any change of address shall be effected by written notice to the other Trustees.

Section 13.9. SEVERABILITY. Should any provision in this Agreement and Declaration of Trust or in the Plan or Rules and Regulations adopted thereunder or in any Collective Bargaining Agreement be deemed or held to be unlawful or

62

EXHIBIT NO. 2-63
PAGE NO. 85

invalid for any reason, such fact shall not adversely affect the provisions herein and therein contained unless such illegality shall make impossible or impractical the functioning of the Trust and the Plan, and in such case the appropriate parties shall immediately adopt a new provision to take the place of the illegal or invalid provision.

Section 13.10.    TITLES.    The headings to the various Sections and Articles are for the purpose of convenience only and shall not have any legal significance apart from the text.

Effective January 1, 1989.

At Washington, D.C.

FOR THE
UNITED BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA, AFL-CIO

_____
Sigurd Lucassen
101 Constitution Ave., N.W.
Washington, D.C.  20001

_____
Leonard B. Zimmerman
3715 Ridgefield Rd.
Lansing, Mich. 48906

63

EXHIBIT NO. 2-64
PAGE NO. 86

FOR THE
CONTRIBUTING EMPLOYERS

_____
Jack Henson
Brown Machinery Company, Inc.
1125 Exchange Avenue
Oklahoma City, Okla.    73108

_____
Alan Chil'cote
Ishibrook
4500 Summit View Rd.
Dublin, Ohio    43017

L0509CH.HB3

64

EXHIBIT NO. 2-65
PAGE NO. 89

## RESOLUTION

The Trustees of the Carpenters Labor-Management Pension Fund do hereby adopt the revisions to the Fund's governing documents as set forth in the attachments hereto, said revisions to be effective January 1, 1989.

_____
Sigurd Lucassen

_____
Leonard B. Zimmerman

_____
Jack Henson

_____
Alan Chil'cote

Dated:   July 18, 1989

EXHIBIT NO. 2-66
PAGE NO. 88

## POLICY ON
## CONTRIBUTION AND DELINQUENCY COLLECTIONS, AND AUDITS
## OF THE
## CARPENTERS LABOR-MANAGEMENT PENSION FUND

Pursuant to their authority under Article V of the Agreement and Declaration of Trust ("Trust Agreement") of the Carpenters Labor-Management Pension Fund ("Fund"), the Trustees have adopted the following policy ("Policy") which will provide a uniform and effective system for monitoring Contributing Employers to ensure the timely receipt of the Employer's Monthly Reports to the Trustees ("Monthly Reports") and pension contributions, as well as any other monies due, including interest charges, liquidated damages, attorneys' fees and other collection expenses.

## ARTICLE I

### General Principles

(a)  Consistent with their fiduciary responsibilities under the Employee Retirement Income Security Act ("ERISA") the Trustees will take all steps necessary, within their reasonable discretion, which they are entitled to exercise under the Trust Agreement and existing law and regulations, to enforce the reporting and contribution requirements and all other obligations imposed by the Fund on its Contributing Employer.

(b)  The Trustees will review at each meeting the nature and amount of existing delinquencies, the efforts being made by the Fund's Contract Administrator and General Counsel to collect these delinquencies and any reports of audits made of Contributing Employers since the preceding Trustee meeting.

(c)  A committee of Trustees appointed by the Board of Trustees may act on behalf of the Board of Trustees in such matters allocated to the committee. In this Policy, reference to the "Trustees" shall mean the committee of Trustees, when applicable.

(d)  For purposes of this Policy all references to days shall mean calendar days.

EXHIBIT NO. 3-1
PAGE NO. 89

## ARTICLE II

### Reporting and Contribution Policy

(a)   It is the responsibility of each Contributing Employer to maintain complete and accurate payroll records on any Employee who performs work covered by the Collective Bargaining Agreement between the Local Union or District Council and the Participating Employer or the Fund Participation Agreement or other written document obligating the Employer to contribute to the Fund ("Agreement"). These records must be retained for a period of at least six years.

(b)   A Contributing Employer that has signed an Agreement will remain in "active status" unless and until the Contract Administrator is informed, in writing, by the Business Representative responsible for the Local Union or District Council that is a co-party to its Agreement ("Participating Local Union"), that such Contributing Employer has permanently ceased to have an obligation to contribute to the Fund.

(c)   Every Contributing Employer in active status is required to file with the Fund the Monthly Report and all other reports that may be required by the Trustees and remit any and all contributions due for work for which contributions are required pursuant to an Agreement. Monthly Reports must be filed even for those months during which the Contributing Employer did not employ any bargaining unit employees. If a Contributing Employer operates in the jurisdiction of more than one Participating Local Union, it is required to file separate Monthly Reports for each jurisdiction.

(d)   Monthly Reports and contributions shall be due and payable by the fifteenth day of the month following the month on which the Monthly Report and contributions are based (the "Due Date"). The Reports and contributions must be received at the office of the Contract Administrator or its designated agent by the Due Date.

(e)   The Fund's Contract Administrator will send a copy of each Monthly Report to the appropriate Participating Local Union. It is the policy of the Fund to encourage Participating Local Unions to promptly review the Monthly Reports and to report any discrepancies to the Fund's Contract Administrator.

(f)   In the event the Fund initiates a lawsuit against a delinquent Contributing Employer, and such Employer has not remitted one or more Monthly Reports, and there is no payroll audit for the relevant period(s), the Fund, in its sole discretion, may estimate and assess the amount the Employer owes in contributions and may calculate interest, liquidated damages, and related charges based upon such estimate.

EXHIBIT NO. 3-2
PAGE NO. 90

## ARTICLE III

### Delinquency Procedures

(a)     Contributing Employers, required to file Monthly Reports and contributions directly with the Fund's Contract Administrator, shall be considered delinquent, if such Reports or contributions are not received by the Fund's Contract Administrator by the first business day occurring on or after the fifteenth day of the month following the month for which the Monthly Report or contributions are based (the "Due Date").

(b)     The Fund's Contract Administrator will promptly record all delinquencies and will take the following action with regard to each delinquent Contributing Employer:

1.     Promptly after the applicable Due Date, each newly delinquent Contributing Employer shall receive a letter ("First Notice") from the Fund's Contract Administrator, informing the Contributing Employer of its delinquent status and assessing interest if known, or that interest will be assessed if not yet known, as of the Due Date. The Contributing Employer shall have thirty (30) days to respond from the date the First Notice is issued. A copy of that letter will be sent by the Fund's Contract Administrator to the Participating Local Union under cover of a letter which shall inquire whether the Contributing Employer is still active and, if so, whether it employed any employees for whom contributions are due to the Fund during the period of the stated delinquency.

2.     If the Contributing Employer has not remitted all Reports and Contributions by the deadline in the First Notice, the Fund's Contract Administrator shall send a second delinquency letter ("Second Notice") to the Employer. This Second Notice shall include (a) a demand for updated interest, if known; and (b) notice that a delinquency audit will be conducted at the Employer's expense, if payment in full is not made within twenty-one (21) days of the date the Second Notice is issued. This letter shall be sent by certified mail, return-receipt requested, to ensure receipt by the Contributing Employer. A copy of that letter should also be sent to the Participating Local Union.

3.     Contributing Employers that have not satisfied their delinquency within twenty-one (21) days of the date of the Second Notice will be scheduled for a delinquency audit, where appropriate, by the Contract Administrator. The Fund's Contract Administrator will notify the Contributing Employer of the audit results and request payment, including the delinquent contributions plus interest, and the cost of the audit. If

EXHIBIT NO. 3-3
PAGE NO. 91

payment in full is not made within thirty (30) days of the date of the Contract Administrator's notice to the Contributing Employer, the Contract Administrator will refer the matter to the Fund's Counsel who will take appropriate legal action to correct the delinquency.

4.    If it appears that a contribution delinquency presents an immediate threat to the interests of the Fund, the Fund's Contract Administrator, upon authorization by the Trustees, may immediately refer the delinquency to the Fund's General Counsel for appropriate legal action.

(c)    Fees and charges to be assessed will be determined as follows, as costs of administration and collection and to make the Fund whole:

1.    Any Contributing Employer carrying a contribution delinquency for thirty (30) days or more from the end of the work month for which a contribution is due will automatically be assessed interest at the rate of 1 ½ percent (1.5%) per month or 18% per annum, beginning as of the Due Date. All interest assessments will be immediately due and payable. The Fund's Contract Administrator will initially notify the Contributing Employer in writing of the interest charges.

2.    Any Contributing Employer carrying a reporting delinquency for thirty (30) days or more will, in the discretion of the Trustees, be assessed a penalty for each delinquent Monthly Report.

3.    Liquidated damages shall be seven hundred fifty dollars ($750.00) or twenty percent (20%) of the principle amount of contribution delinquency, whichever is greater. Liquidated damages shall be assessed at the time a lawsuit is filed on behalf of the Fund, or at such time as may be determined by the Trustees.

4.    Any Contributing Employer, against whom legal action is taken to collect delinquent contributions, shall be charged liquidated damages, audit fees, attorneys' fees and costs incurred by the Fund in taking such legal action.

5.    Any Contributing Employer that makes payable to the Fund a check for payment of contributions due that is not honored by the drawee bank upon presentation, will be assessed a charge of up to five hundred dollars ($500.00) for each such dishonored check and will be treated as a delinquent Contributing Employer. Such charges may be waived by the Trustees in the event that a substitute check drawn on sufficient funds is paid within thirty (30) days or for good cause shown by the Contributing Employer.

EXHIBIT NO. 3-4
PAGE NO. 92

(d)   Except where good cause is shown, within the determination of the Trustees or the Fund's General Counsel, no extension of time in which a Contributing Employer is required to make a monthly contribution may be granted unless such extension is set forth in a promissory note which contains the following minimum provisions:

1.   Fifty percent (50%) of the amount due shall be paid immediately;

2.   Payments shall extend for no more than twelve (12) months;

3.   The Contributing Employer acknowledges in writing a confession of judgment on the amount due and the method of payment;

4.   Interest shall accrue and be paid monthly at the rate of 1 ½ percent (1.5%) or 18% per annum of the remaining balance;

5.   If the Contributing Employer is delinquent during any other month, the unpaid balance of the past delinquency and all amounts set forth in the promissory note will become immediately due and payable;

6.   If the Contributing Employer fails to meet payments on the promissory note on a timely basis, the Fund shall be entitled to liquidated damages equal to seven hundred and fifty dollars ($750.00) or twenty percent (20%) of the balance remaining, whichever is greater.

EXHIBIT NO. 3-5
PAGE NO. 93

## ARTICLE IV

### Audits of Employee

(a)  Random Audits

  1.  It is the policy of the Trustees to conduct random audits ("Random Audits") of Contributing Employers for the purpose of determining whether, and assuring that, Contributing Employers have satisfied their reporting and contribution obligations to the Fund.

  2.  All Random Audits shall be conducted according to a schedule established by the Fund's auditor in consultation with the Fund's Contract Administrator, subject to approval by the Trustees. In making such decision, the Trustees will take into account any "joint payroll audit programs" entered into by the Fund with local employee benefit funds.

  3.  Contributing Employers selected for a Random Audit will be contacted by letter from the Fund's Contract Administrator. There upon, it will become the responsibility of the auditor to make contact with the Contributing Employer to set up an appointment for the audit. It is the policy of the Fund to conduct such audits within a reasonable period of time after notice to the Contributing Employer.

(b)  Delinquency Audits

  1.  The Trustees shall conduct a payroll audit of any Contributing Employer that has been determined to be delinquent in their contributions to the Fund or has failed to cure its delinquency (including interest and other assessments) in full ("Delinquency Audit"). The Contributing Employer shall be liable for all costs of and associated with the Delinquency Audit.

  2.  Contributing Employers selected for Delinquency Audits will be contacted by the Fund's Contract Administrator. Copies of each of these letters shall be sent to the auditor. There upon, it will become the responsibility of the auditor to make contact with the Contributing Employer to set up an appointment for the audit. It is the policy of the Fund to conduct such audits within a reasonable period of time after notice to the Contributing Employer.

(c)  General Auditing Standards and Requirements

  1.  Audits shall be conducted by auditors designated or approved by the Trustees.

EXHIBIT NO. 3-6
PAGE NO. 94

2.    The Fund's auditors shall be authorized to enter upon the premises of any
Contributing Employer at reasonable times and during business hours to
examine and copy any and all books, records, papers or reports of such
Contributing Employer that the Trustees or the auditors deem necessary
for determining whether or not the Contributing Employer is in full
compliance with its reporting and contribution obligations to the Fund.
These documents shall include, but are not limited to, the following:

General Ledger
Financial Statements
All job cost records
Cash disbursement records, including
Cash register
Paid or canceled checks
Bank statements
Corporate income tax returns
Personal income tax returns of each person
        with a 10 percent or greater, direct or
        indirect, financial or other beneficial interest
        in the business
All employee time cards
Payroll journals
All employee personnel files
Individual earnings records for all employees
Forms W-2, 1099 and 1096 remitted during the audit period
State and Federal quarterly tax returns
Health and welfare and other pension reports
Cash receipts journal
Billing invoice copies
Copies of all contracts
Subcontract invoices or billing

The employee records subject to review include records of all
"employees," as that term is defined at 29 U.S.C. § 1002(6).

In addition, the audited Contributing Employer must produce, upon
request, records showing the names of all persons having an ownership
interest in any sole proprietorship or non-corporate business organization
and the names of the officers and directors of any corporation that is a
Contributing Employer.

(d)    The auditor will report the results of each Random Audit or Delinquency Audit
to the Trustees or Fund Contract Administrator within thirty (30) days after the
completion of the field work. If the payroll audit establishes that contributions
are due the Fund, then the audited Contributing Employer will be considered

EXHIBIT NO. 3-7
PAGE NO.    95

delinquent and a billing of the required amount, with any applicable interest charges and audit costs (subject to section (e) below), shall be sent by certified mail to the Contributing Employer.

(e) The cost of the audit will be charged to the audited Contributing Employer only under the following circumstances:

1. If the Contributing Employer was selected for a Delinquency Audit as defined in Article IV(b) above; or

2. If the Contributing Employer was selected for a Random Audit, it shall bear the cost of the audit, only if the audit demonstrates a substantial underpayment. For the purposes of this Policy, a "substantial underpayment" is one in which the actual contributions for the period of the audit were twenty percent (20%) or at least seven hundred fifty dollars ($750.00) less than the amount required, provided, however, that in the case of a Random Audit finding of a substantial underpayment, the audit fee will be waived if payment of the delinquent contribution and interest is made, in full, within thirty (30) days of notification thereof. Any Contributing Employer that refuses or neglects to pay in full a substantial underpayment finding from a Random Audit within thirty (30) days shall bear the cost of the audit.

(f) In the event a Contributing Employer fails or refuses to submit to an audit or in any way fails or refuses to cooperate with the auditor, the Trustees will take any and all action, including the commencement of legal proceedings, if necessary, to ensure that the audit is conducted. Such Contributing Employer will be responsible for all attorneys' fees and costs incurred by the Trustees in enforcing the audit provisions of the Trust Agreement, as well as the cost of any resulting audit. In addition, such Contributing Employer will be subject to expulsion from the Fund, in the sound discretion of the Trustees.

(g) In the event that, for any reason, a Contributing Employer is unable to produce requested records reflecting monies paid during all or part of the audit period, the Trustees may conduct a full inquiry for the purpose of determining the amount of contributions due and owing by the Contributing Employer. All costs and expenses incurred by the Trustees in engaging in such investigation will be charged to the Contributing Employer under investigation. The scope of such investigations shall include, but not be limited to, the following:

1. Investigation of all construction projects upon which work was performed during the audit period; and/or

2. Interviews with any person or persons with knowledge relevant to such inquiry, and the securing of any other such information as deemed to be

EXHIBIT NO. 3-8
PAGE NO. 96

relevant by the Trustees.

(h)   It is the policy of the Trustees to enter into "joint payroll auditing programs," where appropriate, with local employee benefit funds for the purpose of sharing audit costs.

(i)   In all lawsuits brought by the Fund to collect delinquent contributions, the Fund's General Counsel will demand, as part of the relief requested, that the Court order an audit of the defendant Contributing Employer, by auditors selected by the Trustees or by the Court, and that the cost of the audit be borne by the defendant Contributing Employer, if such audit has not already been performed.

EXHIBIT NO. 3-9
PAGE NO.    97

EXHIBIT NO. 3-00
PAGE NO. 98

ADMINISTRATIVE PROCEDURES
FOR
POLICY ON
CONTRIBUTION AND DELINQUENCY COLLECTIONS, AND AUDITS
OF THE
CARPENTERS LABOR-MANAGEMENT PENSION FUND

## I.    INTRODUCTION

It is hereby agreed and acknowledged that the Administrative Procedures set forth herein in no way alter or amend the Administrative Service Contract by and between Zenith Administrators, Inc. (the "Contract Administrator," "Zenith," or the "Company" ) and the Trustees of the Carpenters Labor-Management Pension Fund, of which Section 9 and 10 are set forth below for emphasis:

### DELINQUENCY

9.1    The responsibility of the Company is to participate fully in the contribution, delinquency and audit procedures established by the Fund's Trustees.

### RESPONSIBILITIES

10.1    The Trustees agree that the sole function of the Company is to provide administrative services.

10.2    It is understood that the Company performs purely ministerial functions for the Trustees within a framework of policies, interpretations, rules, practices and procedures made by the Trustees. It is further agreed that the Company does not have discretionary authority or discretionary controls respecting management of the Fund, does not exercise any authority or control respecting management or disposition of the assets of the Fund and does not render investment advice with respect to any money or other property of the Fund and has no authority or responsibility to do so.

## II.    MINISTERIAL FUNCTIONS IN CONNECTION WITH THE DELINQUENCY POLICY

In compliance with the request of the Trustees, the Fund's Contract Administrator , will perform the following ministerial functions as outlined in the "Policy on Contribution and Delinquency Collections, and Audits of the Carpenters Labor-Management Pension Fund" (the "Policy").

EXHIBIT NO. 4-1
PAGE NO. 99

The Fund's Contract Administrator will promptly record all delinquencies at the end of each month and will take the following action with regard to each delinquent Contributing Employer:

1.  **First Notice**

    (A)   Between the first and fifth day of the month following the "Due Date," the "First Notice" will be mailed to the Contributing Employer informing it of its delinquent status and that interest is assessed at the rate of 1½ percent (1.5%) per month or 18% per annum, beginning as of the Due Date. (Sample Notice attached as Exhibit I.)

    (B)   A copy of the First Notice will be sent to the Participating Local Union or Council under cover of a letter which shall request written confirmation of whether the Contributing Employer is still active and, if so, whether it employed any bargaining unit employees during the period of the stated delinquency.

    (C)   A Contributing Employer that has signed a Collective Bargaining Agreement, Fund Participation Agreement or any other written document obligating it to make pension contributions to the Fund will remain in "active status" unless and until the Contract Administrator is informed, by the Business Representative responsible for the Local Union or Council that is a co-party to its Agreement ("Participating Local Union"), that such Contributing Employer has ceased to have an obligation to contribute to the Fund.

2.  **Second Notice**

    (A)   Prepare a list of Contributing Employers that did not remit the required contribution report and all corresponding contributions within thirty (30) days from the date the First Notice issued.

    (B)   Prior to the Second Notice being mailed, a telephone call will be initiated to the Local Union or Council that did not respond to the initial inquiry to ascertain whether the Employer employed bargaining unit employees during the month(s) reflected as "Delinquent."

    (C)   Unless the Local Union or Council confirms that the Employer did not work any bargaining unit employees during that month, a Second Notice will be sent to the Delinquent Employer. The Second Notice shall include (1) a demand for updated interest, if known; and (2) notice that a delinquency audit will be conducted at the Employer's expense, if payment in full is not made within twenty-one (21) days of the date the Second Notice is issued.

EXHIBIT NO. 4-2

PAGE NO. 100



The Second Notice shall be sent by certified mail, return-receipt requested, to ensure receipt by the Contributing Employer. (Sample of Second Notice - Exhibit II.)

A copy of the Second Notice will be sent to the Participating Local Union.

3. **Scheduling the Delinquency Audit**

Contributing Employers that have not satisfied their delinquency within twenty-one (21) days of the date of the Second Notice will be scheduled for a "Delinquency Audit."

(A)  Promptly after the expiration of the 21-day waiting period for the Second Notice, the Fund's Contract Administrator will advise the Contributing Employer that a "Delinquency Audit" is being scheduled and they will be contacted by the Fund Auditor to schedule an appointment. (Sample letter - Exhibit III.)

(B)  At the same time as the letter in (A) is sent to the Employer, the Fund's Contract Administrator will generate a "Single Field Audit Report," and make copy of the signed collective bargaining agreement. These documents will be included with the letter to the auditor, requesting a "Delinquency Audit" be performed at the earliest possible date.

(C)  At the same time as the letter is (A) is sent to the Employer, a letter will be sent to the associated local employee benefit funds, inquiring as to whether or not they desire to participate in a "joint payroll audit" with respect to the delinquent employer (Sample letter - Exhibit IV).

4. **The Delinquency Audit**

(A)  Promptly after receipt of the Fund's request to conduct a Delinquency Audit, the auditor will initiate scheduling of the audit with the Employer. If the Employer refuses to schedule an on-site visit to gather data for the audit or fails to agree to proposed dates for such on-site visit within a reasonable period of time the matter shall be referred to Fund's General Counsel to enforce the Fund's right to conduct a payroll audit. If the Employer rejects General Counsel's effort to commence the payroll audit, General Counsel may bring suit against the Employer to enforce the Fund's rights. General Counsel shall advise the Trustees, the Contract Administrator, and the auditor of such action.

3

EXHIBIT NO. 4-3
PAGE NO. 101

(B)     Generally, the period that may be subject to the Delinquency Audit shall begin with the latest of (1) the first of the month following the previous payroll audit; (2) the earliest date not excluded by the applicable statute of limitations; or (3) such date as the auditor, Contract Administrator, and Fund Counsel may agree. Generally, the end of the payroll audit period shall be the latest of (1) the end of the most recent quarter for which payroll tax documents are available or (2) such other date as the auditor and Contract Administrator shall agree. The auditor may restrict, or if necessary expand, the period of the audit based upon the application of reasonable payroll auditing standards.

(C)     The Trustees recognize the need to balance conducting payroll audits in a timely manner with the cost efficiency of grouping payroll audits in the same geographic vicinity. Payroll audits will be completed as soon as practicable.

## 5.     Notice of Audit Results

The auditor will report the results of each "Delinquency" audit to the Trustees, Fund Contract Administrator, and Fund's General Counsel within thirty (30) days after the completion of the field work.

Upon receipt of the Auditor's findings, the Fund's Contract Administrator will notify the Contributing Employer of the audit results.

(A)     If the audit reveals no discrepancies, a letter advising the Employer of same will be written, including demand for payment of the cost of the payroll audit (Sample letter - Exhibit V).

(B)     If the audit reveals discrepancies, a letter will be sent by certified mail wherein the Contract Administrator will request payment including the delinquent contributions, interest, and the cost of the audit.

(C)     If payment in full is not received within thirty (30) days of the date the Contract Administrator's demand for payment was issued to the Contributing Employer, the Contract Administrator will refer the matter to Fund Counsel who will take appropriate legal action to correct the delinquency, in accordance with these Procedures.

## 6.     Report Delinquency Status to the Trustees

The Contract Administrator will prepare a report for distribution at each regularly scheduled Trustees' meeting. The list will reflect changes since the previous report and include the following:

4

EXHIBIT NO. 4-4
PAGE NO. 102

(A)    Contributing Employers to whom First Notices were sent, including the date the Notice was sent and the delinquent period.

(B)    The amount of the interest, late charges assessed.

(C)    The amount of the interest and charges received.

(D)    Contributing Employers who were sent a Second Notice, including the date sent.

(E)    Contributing Employers who were referred to the Auditor for "Delinquency Audits" and the date referred.

(F)    The findings of the "Delinquency Audits" and the date of such findings.

(G)    Resolution of any previously outstanding cases.

(H)    Contributing Employers that were referred to Fund's General Counsel for collection and date of referral.

Trustees will review the nature and amount of existing delinquencies, the efforts being made by the Fund's Contract Administrator and Fund Counsel to collect these delinquencies and any reports of audits made of Contributing Employers since the preceding Trustee meeting.

## 7.    Miscellaneous

### (A)    Check(s) Not Honored

Any Contributing Employer that makes payable to the Fund a check for payment of contributions due that is not honored by the drawee bank upon presentation, will be assessed a charge of up to five hundred dollars ($500.00) for each such dishonored check and will be treated as a delinquent Contributing Employer. Such charges may be waived by the Trustees in the event that a substitute check drawn on sufficient funds is paid within thirty (30) days or for good cause shown by the Contributing Employer. The Contract Administrator will report such events to the Board of Trustees.

### (B)    Bankruptcy Filings

When the Contract Administrator is notified that a Contribution Employer has filed for bankruptcy protection, the notice of same along with an estimated amount of delinquency will be referred to Fund's General Counsel for appropriate filings with the bankruptcy court.

EXHIBIT NO. 4-5
PAGE NO. 103



## III.    MINISTERIAL FUNCTIONS IN CONNECTION WITH THE FUND'S RANDOM AUDIT PROGRAM

All "Random Audits" shall be conducted according to a schedule established by the Fund's auditor in consultation with the Fund's Contract Administrator, subject to approval by the Trustees.

### 1.    Provide Auditor with Listing of Employers

The Contract Administrator will produce and provide the Fund auditor with a copy of the "Cash Summary Report" which provides a listing of all Contributing Employers, the number of employees reported by the Employer, and their contributions history for the past twelve (12) month period.

### 2.    Auditor's Selection of Employers to be Audited and Reporting to the Trustees

The Trustees hereby delegate to the Fund's auditor the responsibility for selecting the Employers to be the subject of payroll audits. The Fund's auditor assumes full responsibility for the selection and auditing of such Employers. The auditor will submit a report to the Trustees upon request, but at least annually, regarding the Employers which have been audited, the auditor's findings, the status of outstanding audits, and other such information as the Trustees may require.

### 3.    Joint Participation with Associated Funds

The Contract Administrator will notify associated local employee benefit funds of Contribution Employers who have been selected for the Random Audit Program. The associated funds will be afforded the opportunity to jointly participate in the audit(s) for the purpose of sharing audit costs.

The Contract Administrator will advise the Auditor of the associated funds' approval or rejection to participate jointly in the Random Audit.

### 4.    Notice to Employers

(A)    Prior to the payroll audit, the Contributing Employer will be contacted by letter from the Fund's Contract Administrator (sample letter attached as Exhibit VI) and a copy of said letter will be sent to the auditor.

6

EXHIBIT NO.    4-6
PAGE NO.    104



There upon, it will become the responsibility of the auditor to contact the Contributing Employer to set up an appointment for the audit. It is the policy of the Fund to conduct such audits within a reasonable period of time after notice to the Contributing Employer.

(B)     In the event a Contributing Employer fails or refuses to submit to an audit or in any way fails or refuses to cooperate with the auditors, the matter will be referred to Fund's General Counsel for resolution.

## 5.    Audit Findings

The auditors will report the results of each "Random" audit to the Trustees or Fund Contract Administrator within thirty (30) days after the completion of the field work.

(A)     If the audit reveals no discrepancies, a letter advising the Employer of same will be written. (sample letter - Exhibit VII).

(B)     If the payroll audit establishes that contributions are due the Fund, then the audited Contributing Employer will be considered delinquent and the Contract Administrator will produce a billing of the required amount, with any applicable interest charges and audit costs (if appropriate), shall be sent by certified mail to the Contributing Employer.

(C)     Assessing Audit Costs: The cost of the audit will be charged to the audited Contributing Employer only under the following circumstances:

1.      If the Contributing Employer was selected for the audit because it was a "known delinquent" as defined in Article IV(a)(2) of the Policy or a delinquency audit as defined in Article IV(b) of the Policy;

2.      If the Contributing Employer was selected for a "random" audit and was not a "known delinquent" or a "delinquency audit," it shall bear the cost of the audit, only if the audit demonstrates a "substantial" underpayment. For the purposes of this Policy, a substantial underpayment is one in which the actual contributions for the period of the audit were twenty percent (20%) or at least seven hundred fifty dollars ($750.00) less than the amount required, provided, however, that in all such cases, the audit fee will be waived if payment of the delinquent contribution and interest is made, in full, within thirty (30) days of notification thereof. Any Contributing Employer that refuses or neglects to pay in full within thirty (30) days shall bear the cost of the audit.

*should go to legal + not have another letter*

7

EXHIBIT NO. 4-7
PAGE NO. 105

## IV.    ROLE OF FUND'S GENERAL COUNSEL

(A)    Whenever a delinquency is referred to the Fund's General Counsel, he is authorized to exercise his discretion as to what action to take, unless otherwise instructed by the Trustees. As a general rule, the General Counsel will commence legal action against any Contributing Employer that is delinquent to the Fund in excess of $250 or where the amount of the delinquency is unknown because the Contributing Employer has not filed Monthly Reports. In each lawsuit filed, the General Counsel will seek attorneys' fees and costs pursuant to Section 502(g)(2) of ERISA. The General Counsel is authorized to refer matters to other counsel located in the jurisdiction where a delinquent Employer is located, if such referral is in the best interests of the Fund. *may use their procedures when reasonable*

(B)    The General Counsel is authorized to enter into settlement negotiations with any delinquent Contributing Employer. Any decision to accept less than the full and required contributions plus other monies due, if any, or any decision not to pursue litigation or to discontinue litigation, shall be made by the Trustees on the advice of the General Counsel; provided, however, that the General Counsel is authorized to settle any case where the delinquent Contributing Employer agrees to pay the full amount of the delinquency plus other damages not less than the full amount of interest accrued plus the greater of $750 or 20 percent of the delinquency. The General Counsel is also authorized to enter into settlement agreements allowing the Contributing Employer an extension of time to fully pay delinquencies and other amounts due the Fund, provided that such agreements comply with the requirements of Article III(c) of the Policy. As a general rule, the Trustees will not enter into a less than whole settlement and will not institute or will withdraw pending litigation only where they conclude, with the advice of General Counsel, that such action will be in the best economic interests of the Fund.

(C)    The General Counsel is authorized to enter an appearance on behalf of the Fund in any bankruptcy proceeding involving a delinquent Contributing Employer.

8

EXHIBIT NO. 4-8
PAGE NO. 106

**CARPENTERS LABOR-MANAGEMENT PENSION FUND**
5421 S.W. 27TH STREET
OKLAHOMA CITY, OK 73128

PHONE: (405) 682-2323
TOLL FREE: (800) 344-0144
FAX (405) 682-2651

**EXHIBIT I**

January 20, 2000



Local Union/Council:

Dear Contributing Employer:

Our records indicate that we have not received from your company
the Monthly Report to the Trustees and contributions due, if any,
for the month(s) indicated below.

The Fund's employer contribution procedures, established pursuant
to the Fund's Agreement and Declaration of Trust, require that the
Report for a particular month, together with any contributions due,
be remitted to the Plan Administrator's office by the fifteenth day
(the Due Date) of the following month.

Any employer that has a reporting delinquency may, in the
discretion of the Trustees, be assessed a penalty for each
delinquent report.   Moreover, if the Monthly Report and
contributions are not received by the fifteenth day of the month
following the month in which the Due Date falls, interest of 1-1/2
percent per month of the delinquent amount will be assessed
automatically from the Due Date, and the Trustees will arrange for
a payroll audit of your company's records to be conducted at your
expense.

Even if you have not employed any carpenters during the course of
a month, your company is still required to submit a Monthly Report.
Your company became obligated to follow these procedures when it
entered into an agreement with the above Local Union.

We trust that this delinquency will be promptly corrected.

Sincerely,

Board of Trustees

cc: Local Union

EXHIBIT NO. 4-9
PAGE NO. 107

**CARPENTERS LABOR-MANAGEMENT PENSION FUND**
5421 S.W. 27TH STREET
OKLAHOMA CITY, OK 73128

PHONE: (405) 682-2323
TOLL FREE: (800) 344-0144
FAX (405) 682-2651

**EXHIBIT II**

January 20, 2000

TO:    Participating Local Unions

RE:    Delinquent Contributing Employers

Dear Business Representative:

Enclosed you will find copies of the first delinquency notice sent to employers in the jurisdiction of your Local that have not paid contributions due the Carpenters Labor-Management Pension Fund for the month noted. This first notice is to notify the Employer that it is delinquent and will be subject to the delinquency procedures as stated.

Please advise the Administrative Office if these companies are still active in your area, even if they are only employing non-union carpenters.

Your prompt response will be very much appreciated. Thank you for your assistance in this matter.

Sincerely,

Lisa Givens
Administrative Office

Enclosures

EXHIBIT NO. 4-10
PAGE NO. 108

**CARPENTERS LABOR-MANAGEMENT PENSION FUND**
5421 S.W. 27TH STREET
OKLAHOMA CITY, OK 73128

PHONE: (405) 682-2323
TOLL FREE: (800) 344-0144
FAX (405) 682-2651

January 20, 2000

**EXHIBIT III**
(Page 1 of 2)

Second

FIELD(Contractor)
FIELD(Street)
FIELD(City, State, Zip)

Re:    Delinquencies - FIELD(Contractor)
       Account No. FIELD(Account No.), Local No. FIELD(Local)

Dear Contributing Employer:

The Fund has not received your "Employer's Monthly Reports" and required pension contributions to the Fund for **FIELD(Delinquent Month)** as required by your Agreement with Local Union No. FIELD(Local), and by the Fund's Agreement and Declaration of Trust ("Trust Agreement"). The Fund Trustees have previously notified you of your delinquent status, but you have failed to cure your delinquencies. According to Fund records, you are now FIELD(# months delinquent) months delinquent. This delinquency must be completely resolved.

The Trustees have adopted certain reporting and collection procedures which are applicable to all contributing Employers. Those procedures require that you complete and submit a Monthly Report, each and every month, including months during which you did not have any employees performing covered work. You must submit your Monthly Reports no later than the fifteenth (15th) day of the month following the month to which each Monthly Report corresponds.

In addition to submitting Monthly Reports, your Agreement and the Trust Agreement require you to remit contributions to the Fund for all employees in the bargaining unit--both union and nonunion--who perform covered work during a reported month. The Monthly Report and contributions are to be mailed to the Fund at the following address:

              Carpenters Labor-Management Pension Fund
              5421 S.W. 27th Street
              Oklahoma City, OK 73128-5805

Please note that the Fund will assess interest on any contributions that remain due and owing for more than thirty (30) days after their due date. Such interest is automatically assessed from the due date, until paid, at the rate of 1½ percent per month.

EXHIBIT NO. 4-11
PAGE NO. 109

FIELD(Contractor)
January 20, 2000
Page 2

**EXHIBIT III**
(Page 2 of 2)

If we do not receive the appropriate Monthly Reports and required payments withing twenty-one (21) days of the date of this letter, the Fund will: (1) conduct a payroll audit at your expense; or (2) sue you in federal court to collect all amounts due, or both. Should the Fund have to collect the delinquency through litigation, you will be required to pay not only the full amount of the delinquency, but also interest, liquidated damages, audit costs, and the Fund's attorney fees and costs as required by ERISA. These additional charges will add substantially to your cost of resolving this matter.

If you have any questions about your obligation, please contact the Fund Office at (405) 682-2323. We anticipate your full cooperation in immediately resolving this matter.

Very truly yours,


Lisa Givens
Administrative Office

cc:    Local Union No. FIELD(Local)
       Richard Arispe
       Sam Smith


EXHIBIT NO. _4-12_
PAGE NO. _110_

**CARPENTERS LABOR-MANAGEMENT PENSION FUND**
5421 S.W. 27TH STREET
OKLAHOMA CITY, OK 73128

PHONE: (405) 682-2323
TOLL FREE: (800) 344-0144
FAX (405) 682-2651

**EXHIBIT IV**
(Page 1 of 2)

January 20, 2000

*Delinquency Audit*

FIELD(1)
FIELD(2)
FIELD(3)
FIELD(4)

> Re:    Delinquency Payroll Audit
>        Local No:

Dear FIELD(5):

This is to inform you that the Board of Trustees of the Carpenters Labor-Management Pension Fund (the "Fund") have selected FIELD(6) (the "Employer") for a payroll audit, pursuant to Section 5 of Article V of the Agreement and Declaration of Trust ("Trust Agreement") establishing the Fund and Article III (b) (3) of the "Employers Contribution, Delinquency and Audit Procedures" (the "Procedures") of the Fund. The Employer is bound by the terms of the Trust Agreement and the Procedures pursuant to Article IV of the Participation Agreement by and between the Employer and Local Unions, United Brotherhood of Carpenters and Joiners of America (the "Union").

By copy of this letter to the Fund's auditor, we are requesting that the auditor (Dell and Needles) contact you to schedule an appointment for the audit. It is the policy of the Fund to conduct such audits within a reasonable period of time after notice to the Employer.

Under the Procedures, the Fund's auditor is entitled to enter the premises of the Employer at reasonable times during business hours to examine and copy any and all books, records, papers, or reports of the Employer which the auditor deems necessary for determining whether or not the Employer is in full compliance with its reporting and contribution obligations to the Fund. In addition, upon request of the auditor, the Employer must produce records showing the names of officers and directors of the Employer.

Additional information concerning this audit is provided in the procedures which are part of the Plan's documents you were provided. If, after reviewing the Procedures, you have additional questions, concerning the audit, please call or write to me.

FIELD(Company Name)
January 20, 2000
Page 2

**EXHIBIT IV**
(Page 2 of 2)

Your help and cooperation is appreciated.

Sincerely,


Lisa Givens
Administrative Office


cc:   Board of Trustees
      Kurt Needles

**CARPENTERS LABOR-MANAGEMENT PENSION FUND**
5421 S.W. 27TH STREET
OKLAHOMA CITY, OK 73128

PHONE: (405) 682-2323
TOLL FREE: (800) 344-0144
FAX (405) 682-2651

January 20, 2000

**EXHIBIT V**

FIELD(Administrator)
FIELD(Street)
FIELD(City, State, Zip)

RE:    Payroll Audit - FIELD(Contractor Name)
       Local Union No. FIELD(Local Union No.)

Dear Administrator:

The Carpenters Labor-Management Pension Fund will be conducting a "Delinquency Audit" of the above referenced Employer. Our records indicate that the Employer participates in the FIELD(Other Fund's Name). If the FIELD(Other Fund's Name) wishes to jointly participate in the scheduled payroll audit, please notify the undersigned by FIELD(2 weeks from date of letter).

If you have any questions, please do not hesitate to contact this office.

Sincerely,


Lisa Givens
Administrative Office

cc:    Kurt Needles

EXHIBIT NO. 4-15
PAGE NO. 113

**CARPENTERS LABOR-MANAGEMENT PENSION FUND**
5421 S.W. 27TH STREET
OKLAHOMA CITY, OK 73128

PHONE: (405) 682-2323
TOLL FREE: (800) 344-0144
FAX (405) 682-2651

January 20, 2000

**EXHIBIT VI**

FIELD(Contact Person)
FIELD(Contractor Name)
FIELD(Street)
FIELD(City, State, Zip)

RE:  Delinquency Payroll Audit
     Local No. FIELD(Local No.)

Dear FIELD(Last Name of Contact):

A payroll audit of your firm's payroll, wage, and other related records was conducted on behalf
of the Carpenters Labor-Management Pension Fund (by Dell & Needles, Inc.). The audit revealed
there were no discrepancies and you were not deficient in your contributions for the applicable
time period, however, pursuant to Article III (b) 2 you are liable for the costs of the audit, in the
amount of $FIELD(Cost of Audit). Please remit a check in the amount of FIELD(Cost of Audit)
by FIELD(Due Date).

Thank you for your assistance with the audit. We appreciate your and your staff's kind
cooperation.

If you have any questions, please do not hesitate to contact this office.

Sincerely,

Lisa Givens
Administrative Office

cc: Board of Trustees

EXHIBIT NO. 4-16
PAGE NO. 114

**CARPENTERS LABOR-MANAGEMENT PENSION FUND**
5421 S.W. 27TH STREET
OKLAHOMA CITY, OK 73128

PHONE: (405) 682-2323
TOLL FREE: (800) 344-0144
FAX (405) 682-2651

January 20, 2000

**EXHIBIT VII**

*Dacup found*
*Post Audit*

FIELD(Contact Person)
FIELD(Contractor)
FIELD(Street)
FIELD(City, State, Zip)

RE:    Local Union No. FIELD(Local No.)

Dear FIELD(Contact Person):

Recently, an audit of your payroll, wage, and related records was performed by the C.P.A. Firm of Dell & Needles, Inc., on behalf of the Carpenters Labor-Management Pension Fund. The auditor discovered deficiencies resulting from omissions and arithmetic errors for the contribution period from FIELD(Audit Period).

The amount owed to the **Carpenters' Labor-Management Pension Fund** is $FIELD(Total Amt Due). This amount includes contributions of $FIELD(Contributions) plus interest of $FIELD(Interest). Enclosed is a copy of the worksheet showing the calculation of the amount owed.

Pursuant to Article III (b) 2 of the Fund's Employer Contribution, Delinquency, and Audit Procedures, you must bear the cost of the audit, which is $FIELD(Cost of Audit).

If you fail to make payment within thirty days, however, the Fund will refer this matter to legal counsel for collection, including the cost of the audit and liquidated damages.

Your cooperation in quickly resolving this matter will be greatly appreciated. If you have any questions, please do not hesitate to call or write me.

Sincerely,

Lisa Givens
Administrative Office

cc:    Board of Trustees

EXHIBIT NO. 4-17
PAGE NO. 115

**CARPENTERS LABOR-MANAGEMENT PENSION FUND**
5421 S.W. 27TH STREET
OKLAHOMA CITY, OK 73128

PHONE: (405) 682-2323
TOLL FREE: (800) 344-0144
FAX (405) 682-2651

January 20, 2000

**EXHIBIT VIII**

FIELD(Administrator)
FIELD(Street)
FIELD(City, State, Zip)

RE:   Payroll Audit - FIELD(Contractor Name)
      Local Union No. FIELD(Local Union No.)

Dear Administrator:

The Carpenters Labor-Management Pension Fund will be conducting a "Random Audit" of the above referenced Employer. Our records indicate that the Employer participates in the FIELD(Other Fund's Name). If the FIELD(Other Fund's Name) wishes to jointly participate in the scheduled payroll audit, please notify the undersigned by FIELD(2 weeks from date of letter).

If you have any questions, please do not hesitate to contact this office.

Sincerely,

Lisa Givens
Administrative Office

cc:   Kurt Needles

EXHIBIT NO. 4-18
PAGE NO. 116

**CARPENTERS LABOR-MANAGEMENT PENSION FUND**
5421 S.W. 27TH STREET
OKLAHOMA CITY, OK 73128

PHONE: (405) 682-2323
TOLL FREE: (800) 344-0144
FAX (405) 682-2651

**EXHIBIT IX**
(Page 1 of 2)

January 20, 2000

FIELD(1)
FIELD(2)
FIELD(3)
FIELD(4)

      Re:   Random Payroll Audit
            Local No:

Dear FIELD(5):

This is to inform you that the Board of Trustees of the Carpenters Labor-Management Pension Fund (the "Fund") have selected FIELD(6) (the "Employer") for a random payroll audit, pursuant to Section 5 of Article V of the Agreement and Declaration of Trust ("Trust Agreement") establishing the Fund and Article IV of the "Employers Contribution, Delinquency and Audit Procedures" (the "Procedures") of the Fund. The Employer is bound by the terms of the Trust Agreement and the Procedures pursuant to Article IV of the Participation Agreement by and between the Employer and Local Unions, United Brotherhood of Carpenters and Joiners of America (the "Union").

By copy of this letter to the Fund's auditor, we are requesting that the auditor (Dell and Needles) contact you to schedule an appointment for the audit. It is the policy of the Fund to conduct such audits within a reasonable period of time after notice to the Employer.

Under the Procedures, the Fund's auditor is entitled to enter the premises of the Employer at reasonable times during business hours to examine and copy any and all books, records, papers, or reports of the Employer which the auditor deems necessary for determining whether or not the Employer is in full compliance with its reporting and contribution obligations to the Fund. In addition, upon request of the auditor, the Employer must produce records showing the names of officers and directors of the Employer.

Additional information concerning this random audit is provided in the procedures which are part of the Plan's documents you were provided. If, after reviewing the Procedures, you have additional questions, concerning the audit, please call or write to me.

EXHIBIT NO.   4-19

PAGE NO.   117

FIELD(Company Name)
January 20, 2000
Page 2

**EXHIBIT IX**
(Page 2 of 2)

Your help and cooperation is appreciated.

Sincerely,


Lisa Givens
Administrative Office


cc:     Board of Trustees
        Kurt Needles

EXHIBIT NO. 4-20
PAGE NO. 118

**CARPENTERS LABOR-MANAGEMENT PENSION FUND**
**5421 S.W. 27TH STREET**
**OKLAHOMA CITY, OK  73128**

PHONE:  (405) 682-2323
TOLL FREE: (800) 344-0144
FAX (405) 682-2651

**EXHIBIT X**

January 20, 2000

FIELD(Contact Person)
FIELD(Company )
FIELD(Street)
FIELD(City, State, Zip)

    RE:   Random Payroll Audit
            Local No: FIELD(Local No.)

Dear FIELD(Contact Person):

A payroll audit of your firm's payroll, wage, and other related records was conducted on behalf of the Carpenters Labor-Management Pension Fund (by Dell & Needles, Inc.).  The audit revealed there were no discrepancies and you were not deficient in your contributions for the applicable time period.

Thank you for your assistance with the audit.  We appreciate your and your staff's kind cooperation.

Sincerely,

Lisa Givens
Administrative Office

cc: Board of Trustees

EXHIBIT NO. ___4-21___
PAGE NO. ___119___

**CARPENTERS LABOR-MANAGEMENT PENSION FUND**
5421 S.W. 27TH STREET
OKLAHOMA CITY, OK 73128

PHONE: (405) 682-2323
TOLL FREE: (800) 344-0144
FAX (405) 682-2651

January 20, 2000

**EXHIBIT XI**

FIELD(Contact Person)
FIELD(Company)
FIELD(Street)
FIELD(City, State, Zip)

Dear FIELD(Contact Person):

Recently, an audit of your payroll, wage, and related records was performed by the C.P.A. Firm of Dell & Needles, Inc., on behalf of the Carpenters Labor-Management Pension Fund. The auditor discovered deficiencies resulting from omissions and arithmetic errors for the contribution period from FIELD(Audit Period).

The amount owed to the **Carpenters' Labor-Management Pension Fund** is $FIELD(Total Amt Due). This amount includes contributions of $FIELD(Contributions) plus interest of $FIELD( Interest). Enclosed is a copy of the worksheet showing the calculation of the amount owed.

Pursuant to Article IV Section G (2), of the Fund's Employer Contribution, Delinquency, and Audit Procedures, if the audit demonstrates a substantial underpayment which the actual contributions for the period of the audit were twenty percent (20%) or at least Seven hundred fifty dollars ($750.00) less that the amount required, the audit fee will be waived if payment of the delinquent contribution and interest is made, in full, within thirty (30) days from the date of this letter.

If you fail to make payment within thirty days, however, the Fund will refer this matter to legal counsel for collection, including the cost of the audit and liquidated damages.

Your cooperation in quickly resolving this matter will be greatly appreciated. If you have any questions, please do not hesitate to call or write me.

Sincerely,


Lisa Givens
Administrative Office

cc:    Board of Trustees

EXHIBIT NO. 4-22
PAGE NO. 120

Freeman-Carder, LLC
Promissory Note
Page 1 of 2

## PROMISSORY NOTE

$29,132.21                               Waltham_____, Massachusetts

18%                                         7/19_____, 2006


FOR VALUE RECEIVED, Freeman-Carder, LLC, ("MAKER") promises to
pay to CARPENTERS LABOR-MANAGEMENT PENSION FUND, ("FUND")
C/O DeCARLO & CONNOR, at 533 South Fremont Avenue, Ninth Floor, Los
Angeles, California 90071-1706, or at such other place as the holder may
designate by written notice to the MAKER, the principal sum of $29,132.21 with
interest from May 1, 2006, until paid at the rate of 18 percent per annum on the
balance remaining from time to time unpaid. Principal and interest shall be due
and payable in lawful money of the United States of America as follows:

(1)   Monthly installments of $3,228.76 or more, being both
      principal and interest, payment shall commence on the 15th day
      of July 2006, and be made on the 1st day of each month
      thereafter until the principal and interest are fully paid;

(2)   Payments which do not clear by the 20th of the month when
      due, incur a late charge of $10.00 (and may incur a bank charge
      of $20.00);

(3)   The payment plan will be considered in default if payment is
      not received by the 25th of the month when due, or if a monthly
      report is not timely received with payment; and

(4)   In the event of a default, the FUND shall be entitled to
      liquidated damages equal to $750 or 20% of the balance
      remaining (whichever is greater).

Each payment shall be credited first to interest then due, then to principal.
MAKER has the right to prepay any amount of principal, including the entire
balance, in advance without penalty, but maker must notify holder in writing of
principal reductions.

If default occurs in the payment of any installment under this note when
due, the entire principal sum and accrued interest shall at once become due and

Freeman-Carder, LLC
Promissory Note
Page 2 of 2

payable ten (10) days after written notice is sent by first class mail to the following name and address: c/o Dr. Steven L. Kurz, Freeman-Carder, located at 20 Sun Street, Waltham, Massachusetts 02453, at the option of the holder of this note.

Failure to exercise such option shall not constitute a waiver of the right to exercise it in the event of any subsequent default.

MAKER agrees to pay the following costs, expenses, and attorney's fees paid or incurred by the holder of this note, or adjudged by a court: (1) Reasonable costs of collection, costs, and expenses, and attorney's fees paid or incurred in connection with the collection or enforcement of this note, whether or not suit is filed; and (2) costs of suit and such sum as the court may adjudge as attorney's fees in any action to enforce payment of this note or any part of it.

Dated: ___7/19___, 2006

_____
FREEMAN-CARDER, LLC.
By: DR. STEVEN L. KURZ
Title: President


STATE OF MASSACHUSETTS

COUNTY OF _____

On this _____ day of _____ 2006, before me, _____, Notary Public, personally appeared DR. STEVEN L. KURZ, proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

EXHIBIT NO. 5-2
PAGE NO. 122

RETAIN FOR YOUR FILE

# CARPENTERS LABOR-MANAGEMENT PENSION FUND

Administrative Office — 1300 S. MERIDIAN, SUITE 200 OKLAHOMA CITY, OK 73108-1751

EMPLOYERS MONTHLY REPORT TO TRUSTEES

| URGENT | AN EMPLOYER MUST FILE THIS REPORT EACH MONTH EVEN THOUGH NO COVERED EMPLOYEES WERE EMPLOYED. | 0004702 | IF NO COVERED EMPLOYEES WERE EMPLOYED DURING THE MONTH, CHECK HERE | |
| **IPORTANT** | THIS REPORT IS DUE ON THE 15TH OF EACH MONTH AND MUST BE RECEIVED NOT LATER THAN THE 25TH TO AVOID LIQUIDATED DAMAGES FOR DELINQUENT REPORTING. | **FINAL REPORT** | NOTE: IF THE PERIOD REPORTED BEGINS MORE THAN 5 DAYS PRIOR TO THE 1ST OF THE MONTH OR EXTENDS 5 DAYS BEYOND THE LAST DAY OF THE MONTH, YOU WILL BE EXPECTED TO FILE A NEW REPORT. | |

EMPLOYERS NAME AND ACCOUNT NO. AS REGISTERED IN ADMINISTRATIVE OFFICE

CLM

FREEMAN CARDER
20 SUN STREET
WALTHAM  MA  02453-

ACCOUNT NO. 0004702
0051A

2. THIS REPORT IS TO COVER MONTH OF:   AUG. 2006

LOCAL NUMBER  L00051

3. PAY PERIOD COVERED BY THIS REPORT

4. RATE OF EMPLOYERS CONTRIBUTION  1.50¢

PLAN

14.  **IMPORTANT NOTICE**
THIS REPORT SHOULD BE ACCOMPANIED BY CHECK PAYABLE TO:
CARPENTERS LABOR-MANAGEMENT PENSION FUND
SEND CHECK WITH ADMINISTRATOR'S COPIES TO:
CARPENTERS LABOR-MANAGEMENT PENSION FUND
1300 SO. MERIDIAN, STE.200
OKLAHOMA CITY, OK 73108-1751

PAGE  0001 OF ___ PGS.

| NAME OF EMPLOYEE | 6. SOCIAL SECURITY NO. | 7. HOURS PAID DURING WEEKLY PAY PERIOD (ENTER WEEKLY TOTALS, THEN COMPLETE 8.) | | | | | 8. TOTAL PER MAN PER MONTH |
| ITIALS  1st  2nd  LAST NAME | | FIRST WEEK | SECOND WEEK | THIRD WEEK | FOURTH WEEK | FIFTH WEEK | |
|---|---|---|---|---|---|---|---|
| ACCIAVATTI JR, EDWARD T | xxx-xx-9122 | 39 | 39.5 | 40 | 43.5 | 44 | 206 |
| BOZIAN, EA | xxx-xx-0408 | 32 ~~37.75~~ | 48.5 ~~29.75~~ | 40.75 ~~31~~ | 41 ~~36.5~~ | 57.75 ~~52.75~~ | 220.5 |
| CARRETTA, PAUL H | xxx-xx-0630 | 31.75 | 31.75 | 31 | 38.5 | 53.75 | 198.75 |
| CULLEN, DAVID C | xxx-xx-7954 | 34 | 39.5 | 31 | 46.5 | 44 | 195 |
| CURZI, DENNIS | xxx-xx-7811 | 36.25 | 16 | 62.35 | 45.5 | 46 | 206 |
| DAGOSTINO, GIOVANNI | xxx-xx-5786 | 40 | 40 | 50 | 170 | 47.5 | 217.5 |
| DI FRANCO, ROBERT G | xxx-xx-2777 | 39.75 | 31.5 | 46 | 40 | 32.5 | 189.75 |
| MENELES, FRANCIS A | xxx-xx-9971 | 42 | 47 | 52 | 61.75 | 49 | 251.75 |
| MINASI, ROCCO | xxx-xx-9055 | 39.5 | 39.75 | 42.25 | 41.5 | 46.25 | 209.25 |
| MOGILIA, ROBERT J | xxx-xx-8759 | 14.5 | 29.5 | 33.75 | 35.75 | 54 | 166.5 |
| MONACO, ANTHONY | xxx-xx-0924 | 40.5 | 48.5 | 44.75 | 56.5 | 44 | 234.25 |
| MONAHAN, PETER C | xxx-xx-6715 | 40 | 48.5 | 40 | 0 | 0 | 128.5 |
| PAQUETTE, JOSEPH J | xxx-xx-3430 | 40.25 | 52 | 52 | 47 | 51.5 | 242.75 |
| ~~SMITH, THOMAS W~~ | xxx-xx-2885 | 0 | 0 | 0 | 0 | 0 | 0 |
| DACRUZ, VIERMINO | xxx-xx-2389 | | | | 16 | 42 | 58 |

| | SUMMARY | PENSION FUND | 9. | TOTAL HOURS THIS PAGE |
|---|---|---|---|---|
| | 10. TOTAL HOURS OF ALL PAGES | 2724.5 HRS. | | 2724.50 |
| | 11. CONTRIBUTION ON TOTAL HRS. | HOURS TIMES RATE IN 4= 1.50 | | 15. NUMBER OF EMPLOYEES LISTED ON THIS FORM AND CONTINUATION SHEETS |
| EMPLOYER, BY: _____ AUTHORIZED SIGNATURE | 12. ADJUSTMENTS A. DESCREPANCIES | | | |
| DATE: _____ ADMINISTRATOR'S COPIES TO ACCOMPANY YOUR REMITTANCE | B. LIQUIDATED DAMAGES | | | |
| | 13. AMOUNT DUE - TOTALS | 4086.75 | | EXHIBIT NO. 6-1 |

NOTICE TO EMPLOYER: One copy of this form will be mailed to you each month. This form must be the 1st page of each monthly report you file. If you cannot list all employees on this sheet, then list additional names on a Continuation Sheet which has been supplied to you, or attach Data Processing

123

# CARPENTERS LABOR-MANAGEMENT PENSION FUND

Administrative Office — 1300 S. MERIDIAN, SUITE 200 OKLAHOMA CITY, OK 73108-1751

**EMPLOYERS MONTHLY REPORT TO TRUSTEES**

| | | |
|---|---|---|
| **URGENT** | AN EMPLOYER MUST FILE THIS REPORT EACH MONTH EVEN THOUGH NO COVERED EMPLOYEES WERE EMPLOYED.  C0G4702 | IF NO COVERED EMPLOYEES WERE EMPLOYED DURING THE MONTH, CHECK HERE ▶ |
| **IMPORTANT** | THIS REPORT IS DUE ON THE 15th OF EACH MONTH AND MUST BE RECEIVED NOT LATER THAN THE 25th TO AVOID LIQUIDATED DAMAGES FOR DELINQUENT REPORTING. | **FINAL REPORT** ☐   NOTE: IF THE PERIOD REPORTED BEGINS MORE THAN 3 DAYS PRIOR TO THE 1ST OF THE MONTH OR EXTENDS 3 DAYS BEYOND THE LAST DAY OF THE MONTH, YOU WILL BE EXPECTED TO FILE A NEW REPORT. |

EMPLOYERS NAME AND ACCOUNT NO. AS REGISTERED IN ADMINISTRATIVE OFFICE

**CLM**

ACCOUNT NO. 0004702
0051A

FREEMAN CARDER
20 SUN STREET
WALTHAM  MA  02453-

LOCAL NUMBER  000051

3. PAY PERIOD COVERED BY THIS REPORT

2. THIS REPORT IS TO COVER MONTH OF:  SEP. 2006

4. RATE OF EMPLOYERS CONTRIBUTION 1.50¢

**PLAN**

14. **IMPORTANT NOTICE**
THIS REPORT SHOULD BE ACCOMPANIED BY CHECK PAYABLE TO:
CARPENTERS LABOR-MANAGEMENT PENSION FUND
SEND CHECK WITH ADMINISTRATOR'S COPIES TO:
CARPENTERS LABOR-MANAGEMENT PENSION FUND
1300 SO. MERIDIAN, STE 200
OKLAHOMA CITY, OK 73108-1751

PAGE____0001 OF_____ PGS.

| NAME OF EMPLOYEE | 6. SOCIAL SECURITY NO. | 7. HOURS PAID DURING WEEKLY PAY PERIOD (ENTER WEEKLY TOTALS, THEN COMPLETE 8.) | | | | | 8. TOTAL PER MAN PER MONTH |
|---|---|---|---|---|---|---|---|
| INITIALS 1st 2nd  LAST NAME | | FIRST WEEK | SECOND WEEK | THIRD WEEK | FOURTH WEEK | FIFTH WEEK | |
| BOZIAN, EA | ●●●●-0406 | 40 | 44.5 | 51.5 | 52 | | 188 |
| CARRETTA, ENID A | ●●●●-0630 | 39.5 | 50 | 44.75 | 46 | | 180.25 |
| CULLEN, DAVID C | ●●●●-7954 | 36 | 36.5 | 42.25 | 48.5 | | 163.25 |
| CORZI, DENNIS | ●●●●-7811 | 39.25 | 49 | 33.5 | 52.5 | | 174.25 |
| DAGOSTINO, GIOVANNI | ●●●●-5786 | 45.5 | 49 | 49.5 | 52.5 | | 196.5 |
| DI FRANCO, ROBERT | ●●●●-2777 | 39.25 | 40 | 39.5 | 40 | | 158.25 |
| MENEZES, FRANCIS A | ●●●●-9971 | 43.5 | 59.5 | 46.5 | 59 | | ~~59~~ 208.5 |
| MINASI, ROCCO | ●●●●-9055 | 40 | 42.5 | 42 | 40.5 | | 165 |
| MOBILIA, ROBERT J | ●●●●-8759 | 50.5 | 43.5 | 39.5 | 66.5 | | 200 |
| MONACO, ANTHONY | ●●●●-0924 | 51.25 | 40 | 46 | 49.25 | | 186.5 |
| MONAHAN, PETER E | ●●●●-6715 | 0 | 0 | 16 | 45 | | 61 |
| PAQUETTE, JOSEPH J | ●●●●-3430 | 51.5 | 67 | 67.5 | 59 | | 245 |
| DOCTOR, VICTRINO | ●●●●-2387 | 42.5 | 50 | 51 | 47 | | 190.5 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**(CORRECT SOCIAL SECURITY NUMBER MUST BE SHOWN)**

| SUMMARY | | PENSION FUND | | 9. TOTAL HOURS THIS PAGE |
|---|---|---|---|---|
| 10. TOTAL HOURS OF ALL PAGES | 2317 HRS. | HOURS TIMES RATE IN | | 2317 |
| 11. CONTRIBUTION ON TOTAL HRS | | 4¢  1.50 | | |
| 12. ADJUSTMENTS  A. DESCREPANCIES | | • | | 15. NUMBER OF EMPLOYEES LISTED ON THIS FORM AND CONTINUATION SHEETS |
| B. LIQUIDATED DAMAGES | | • | | |
| 13. AMOUNT DUE - TOTALS | 3475 • 50 | | | |

EMPLOYER BY:_____
AUTHORIZED SIGNATURE

DATE:_____
ADMINISTRATOR'S COPIES TO ACCOMPANY YOUR REMITTANCE

EXHIBIT NO. 62

NOTICE TO EMPLOYER: One copy of this form will be mailed to you each month. This form must be the 1st page of each monthly report you file. If you cannot list all employees on this sheet, then list additional names on a Continuation Sheet which has been supplied to you, or attach Data Processing

RETAIN FOR YOUR FILE

# CARPENTERS LABOR-MANAGEMENT PENSION FUND

Administrative Office — 1300 S. MERIDIAN, SUITE 200 OKLAHOMA CITY, OK 73108-1751

EMPLOYERS MONTHLY REPORT TO TRUSTEES

**URGENT** — AN EMPLOYER MUST FILE THIS REPORT EACH MONTH EVEN THOUGH NO COVERED EMPLOYEES WERE EMPLOYED.    0004702    IF NO COVERED EMPLOYEES WERE EMPLOYED DURING THE MONTH, CHECK HERE

**PORTANT** — THIS REPORT IS DUE ON THE 15th OF EACH MONTH AND MUST BE RECEIVED NOT LATER THAN THE 25th TO AVOID LIQUIDATED DAMAGES FOR DELINQUENT REPORTING.    **FINAL REPORT**    NOTE: IF THE PERIOD REPORTED BEGINS MORE THAN 3 DAYS PRIOR TO THE 1ST OF THE MONTH OR EXTENDS 3 DAYS BEYOND THE LAST DAY OF THE MONTH, YOU WILL BE EXPECTED TO FILE A NEW REPORT.

EMPLOYERS NAME AND ACCOUNT NO. AS REGISTERED IN ADMINISTRATIVE OFFICE

CLM

FREEMAN CARDER
20 SUM STREET
WALTHAM  MA  02453-

ACCOUNT NO. 0004702
0051A

2. THIS REPORT IS TO COVER MONTH OF: **OCT. 2006**

3. PAY PERIOD COVERED BY THIS REPORT

4. RATE OF EMPLOYERS CONTRIBUTION 1.50¢

**PLAN**

14. **IMPORTANT NOTICE**
THIS REPORT SHOULD BE ACCOMPANIED BY CHECK PAYABLE TO:
CARPENTERS LABOR-MANAGEMENT PENSION FUND
SEND CHECK WITH ADMINISTRATOR'S COPIES TO:
CARPENTERS LABOR-MANAGEMENT PENSION FUND
1300 SO. MERIDIAN, STE 200
OKLAHOMA CITY, OK 73108-1751

LOCAL NUMBER 000051

PAGE 0001 OF     PGS.

| NAME OF EMPLOYEE ITIALS 1st 2nd LAST NAME | 6. SOCIAL SECURITY NO. | 7. HOURS PAID DURING WEEKLY PAY PERIOD (ENTER WEEKLY TOTALS, THEN COMPLETE 8.) | | | | | 8. TOTAL PER MAN PER MONTH |
|---|---|---|---|---|---|---|---|
| | | FIRST WEEK | SECOND WEEK | THIRD WEEK | FOURTH WEEK | FIFTH WEEK | |
| ROLLAN, EA | XX-XX-0408 | 52 | 51 | 55.25 | 31 | 29.25 | 218.5 |
| CARRETTA, ENIO A | XX-XX-0630 | 35.5 | 48 | 28.25 | 36.5 | 34.5 | 182.75 |
| CULLEN, DAVID | XX-XX-7954 | 34.25 | 45.25 | 21.75 | 8 | 34.5 | 143.75 |
| CURZI, DENNIS | XX-XX-7811 | 16 | 47 | 44.75 | 28 | 38 | 173.75 |
| DAGOSTINO, GIOVANNI | XX-XX-5786 | 41.5 | 48.5 | 40 | 37.5 | 40 | 207.5 |
| DI FRANCO, ROBERT G | XX-XX-2777 | 31.25 | 39 | 37 | 23.5 | 29 | 159.75 |
| MENELES, FRANCIS A | XX-XX-9971 | 45 | 44.5 | 39.75 | 40 | 40 | 209.25 |
| MINASI, ROCCO | XX-XX-9055 | 40.5 | 41 | 46.5 | 40 | 38 | 206 |
| MOBILIA, ROBERT J | XX-XX-8759 | 44.5 | 43.75 | 39.75 | 39.25 | 39.5 | 206.75 |
| MONACO, ANTHONY | XX-XX-0924 | 46.75 | 40.75 | 34.25 | 40 | 36.75 | 199.5 |
| MONAHAN, PETER E | XX-XX-6715 | 40.5 | 30.75 | 36.5 | 39 | 40 | 186.75 |
| PANULLIE, JOSEPH J | XX-XX-3430 | 57 | 45 | 50 | 44.5 | 47.5 | 248 |
| DaCruz, Victorino | XX-XX-9389 | 40 | 40 | 38 | 32 | 40 | 190 |

| | SUMMARY | PENSION FUND | | TOTAL HOURS THIS PAGE |
|---|---|---|---|---|
| | 10. TOTAL HOURS OF ALL PAGES | 2531.25 HRS. | | 2531.25 |
| | | HOURS TIMES RATE IN | | |
| | 11. CONTRIBUTION ON TOTAL HRS. 4= | 1.50 | | |
| EMPLOYER, BY: | 12. ADJUSTMENTS A. DESCREP-ANCIES | | | 15. NUMBER OF EMPLOYEES LISTED ON THIS FORM AND CONTINUATION SHEETS |
| AUTHORIZED SIGNATURE | B. LIQUIDATED DAMAGES | | | |
| DATE | 13. AMOUNT DUE · TOTALS | 3796 · 88 | | |

ADMINISTRATOR'S COPIES TO ACCOMPANY YOUR REMITTANCE

NOTICE TO EMPLOYER: One copy of this form will be mailed to you each month. This form must be the 1st page of each monthly report you file. If you cannot list all employees on this sheet, then list additional names on a Continuation Sheet which has been supplied to you by Tech Data Processing.

EXHIBIT NO. 6-3

PAGE NO. 125

RETAIN FOR YOUR FILE

# CARPENTERS LABOR-MANAGEMENT PENSION FUND

Administrative Office — 1300 S. MERIDIAN, SUITE 200 OKLAHOMA CITY, OK 73108-1751

EMPLOYERS MONTHLY REPORT TO TRUSTEES

| **URGENT** | AN EMPLOYER MUST FILE THIS REPORT EACH MONTH EVEN THOUGH NO COVERED EMPLOYEES WERE EMPLOYED. | 0004702 | IF NO COVERED EMPLOYEES WERE EMPLOYED DURING THE MONTH, CHECK HERE ▶ |
|---|---|---|---|
| **IMPORTANT** | THIS REPORT IS DUE ON THE 15TH OF EACH MONTH AND MUST BE RECEIVED NOT LATER THAN THE 25TH TO AVOID LIQUIDATED DAMAGES FOR DELINQUENT REPORTING. | **FINAL REPORT** | NOTE:- IF THE PERIOD REPORTED BEGINS MORE THAN 5 DAYS PRIOR TO THE 1ST OF THE MONTH OR EXTENDS 5 DAYS BEYOND THE LAST DAY OF THE MONTH, YOU WILL BE EXPECTED TO FILE A NEW REPORT. |

EMPLOYERS NAME AND ACCOUNT NO. AS REGISTERED IN ADMINISTRATIVE OFFICE

ACCOUNT NO. 000-4702
0051A

FREEMAN CARDER
20 SUN STREET
WALTHAM MA 02453-

LOCAL NUMBER 000051

3. PAY PERIOD COVERED BY THIS REPORT

4. RATE OF EMPLOYERS CONTRIBUTION 1.50¢

**PLAN**

2. THIS REPORT IS TO COVER MONTH OF:
NOV. 2006

14. **IMPORTANT NOTICE**
THIS REPORT SHOULD BE ACCOMPANIED BY CHECK PAYABLE TO:
CARPENTERS LABOR-MANAGEMENT PENSION FUND
SEND CHECK WITH ADMINISTRATOR'S COPIES TO:
CARPENTERS LABOR-MANAGEMENT PENSION FUND
5421 S.W. 27th St.
OKLAHOMA CITY, OK 73128-5805

PAGE 0001 OF _____ PGS.

| NAME OF EMPLOYEE | 6. SOCIAL SECURITY NO. | 7. HOURS PAID DURING WEEKLY PAY PERIOD (ENTER WEEKLY TOTALS, THEN COMPLETE 8.) | | | | | 8. TOTAL PER MAN PER MONTH |
|---|---|---|---|---|---|---|---|
| INITIALS 1st 2nd LAST NAME | | FIRST WEEK | SECOND WEEK | THIRD WEEK | FOURTH WEEK | FIFTH WEEK | |
| ARSENAULT, JOHN | ___-1917 | 0 | 0 | 0 | 0 | | 0 |
| BOZIAN, RA | ___-0408 | 40 | 40 | 40 | 40 | | 160 |
| CARRETTA, RING A | ___-0630 | 42 | 40 | 40 | 40 | | 162 |
| CULLEN, DAVID C | ___-7954 | 24 | 37.25 | 40 | 42 | | 143.25 |
| CURZI, DENNIS | ___-7811 | 40.5 | 40 | 39 | 26 | | 145.5 |
| DAGOSTINO, GIOVANNI | ___-5786 | 40.5 | 40 | 43.5 | 40 | | 164 |
| DI FRANCO, ROBERT S | ___-2777 | 39 | 38 | 24 | 39 | | 140 |
| MENEZES, FRANCIS A | ___-9971 | 30.5 | 42.5 | 40 | 40 | | 153 |
| MINASI, ROCCO | ___-9055 | 31.5 | 47 | 35.5 | 40 | | 154 |
| MOSILIA, ROBERT U | ___-6759 | 40 | 38.5 | 39.5 | 38 | | 156 |
| MONACO, ANTHONY | ___-0924 | 40 | 46.25 | 40 | 45 | | 171.25 |
| MONAHAN, PETER E | ___-6715 | 39 | 40 | 38 | 38 | | 155 |
| PAQUETTE, JOSEPH J | ___-3430 | 47.5 | 42 | 43.75 | 43 | | 176.25 |
| DACIUZ, VICTORINO | ___-2389 | 40 | 32 | 40 | 40 | | 152 |

| SUMMARY | PENSION FUND | 9. TOTAL HOURS THIS PAGE |
|---|---|---|
| 10. TOTAL HOURS OF ALL PAGES | 2032.25 HRS. | 2032.25 |
| 11. CONTRIBUTION ON TOTAL HRS. | HOURS TIMES RATE IN 4= 1.50 | |
| 12. ADJUSTMENTS A. DESCREP ANCIES | | 15. NUMBER OF EMPLOYEES LISTED ON THIS FORM AND CONTINUATION SHEETS |
| B. LIQUIDATED DAMAGES | | |
| 13. AMOUNT DUE · TOTALS | 3048 . 39 | |

EMPLOYER, BY: _____ AUTHORIZED SIGNATURE
DATE: _____
ADMINISTRATOR'S COPIES TO ACCOMPANY YOUR REMITTANCE

EXHIBIT NO. 6-4

**NOTICE TO EMPLOYER:** One copy of this form will be mailed to you each month. This form must be the 1st page of each monthly report you file. If you cannot list all employees on this sheet, then list additional names on a Continuation Sheet which has been supplied to PAGE each Data Processing

# CARPENTERS LABOR-MANAGEMENT PENSION FUND

Administrative Office — 1300 S. MERIDIAN, SUITE 200 OKLAHOMA CITY, OK 73108-1751

EMPLOYERS MONTHLY REPORT TO TRUSTEES

**EMPLOYERS MONTHLY REPORT TO TRUSTEES**

| . URGENT | AN EMPLOYER MUST FILE THIS REPORT EACH MONTH EVEN THOUGH NO COVERED EMPLOYEES WERE EMPLOYED. | 0004702 | IF NO COVERED EMPLOYEES WERE EMPLOYED DURING THE MONTH, CHECK HERE |
|---|---|---|---|
| **IMPORTANT** | THIS REPORT IS DUE ON THE 15th OF EACH MONTH AND MUST BE RECEIVED NOT LATER THAN THE 25th TO AVOID LIQUIDATED DAMAGES FOR DELINQUENT REPORTING. | **FINAL REPORT** | NOTE: IF THE PERIOD REPORTED BEGINS MORE THAN 1 DA PRIOR TO THE 1ST OF THE MONTH OR EXTENDS 5 DAYS BEYOT THE LAST DAY OF THE MONTH, YOU WILL BE EXPECTED TO FI A NEW REPORT. |

EMPLOYERS NAME AND ACCOUNT NO. AS REGISTERED IN ADMINISTRATIVE OFFICE

**C L M**

FREEMAN CARDER
20 SUN STREET
WALTHAM MA 02453-

ACCOUNT NO. 0004702
0051A

2. THIS REPORT IS TO COVER MONTH OF:
DEC. 2006

**ENTERED MAR 2 6 2007**

LOCAL NUMBER 000051

PAGE 0001 OF_____ PGS.

3. PAY PERIOD COVERED BY THIS REPORT

4. RATE OF EMPLOYERS CONTRIBUTION 1.50 ¢

PLAN

14. **IMPORTANT NOTICE**
THIS REPORT SHOULD BE ACCOMPANIED BY CHECK PAYABLE TO:
CARPENTERS LABOR-MANAGEMENT PENSION FUND
SEND CHECK WITH ADMINISTRATOR'S COPIES TO:
CARPENTERS LABOR-MANAGEMENT PENSION FUND
6401 S.W. 27th St.
OKLAHOMA CITY, OK 73128-5805

| NAME OF EMPLOYEE | 6. SOCIAL SECURITY NO. | 7. HOURS PAID DURING WEEKLY PAY PERIOD (ENTER WEEKLY TOTALS, THEN COMPLETE 8.) | | | | | 8. TOTAL PER M PER MONTH |
|---|---|---|---|---|---|---|---|
| INITIALS  1st  2nd  LAST NAME | | FIRST WEEK | SECOND WEEK | THIRD WEEK | FOURTH WEEK | FIFTH WEEK | |
| ARSENAULT, JOHN | ___-__-1917 | | | | | | |
| BOZIAN, EA | ___-__-0408 | 46 | 26 | 34.5 | 35 | | 141.5 |
| CARRETTA, ENID A | ___-__-0630 | 45.5 | 41 | 38.5 | 37.5 | | 162.5 |
| CULLEN, DAVID C | ___-__-7954 | 40 | 44.5 | 35 | 36 | | 155.5 |
| CURZI, DENNIS | ___-__-7811 | 40.5 | 37 | 45.75 | 40 | | 163.25 |
| DAGOSTINO, GIOVANNI | ___-__-5786 | 38.75 | 48 | 40 | 32.5 | | 159.25 |
| DI FRANCO, ROBERT G | ___-__-2777 | 40 | 40 | 38.5 | 39.5 | | 158 |
| MENEZES, FRANCIS A | ___-__-9971 | 40 | 40 | 34 | 40 | | 154 |
| MINASI, ROCCO | ___-__-9055 | 39.25 | 39 | 39.5 | 40 | | 157.75 |
| MOBILIA, ROBERT J | ___-__-8759 | 37.75 | 40 | 42 | 40 | | 159.75 |
| MONACO, ANTHONY | ___-__-0924 | 48.5 | 40.25 | 48 | 40.25 | | 177 |
| MONAHAN, PETER E | ___-__-6715 | 43.75 | 36 | 39 | 40 | | 158.75 |
| PAQUETTE, JOSEPH J | ___-__-3430 | 42.5 | 49 | 46 | 40 | | 177.5 |
| Dacruz, Vicorino | ___-__-2389 | 40 | 40 | 40 | 40 | | 160 |
| 15. | | | 100 | money received | | | |
| 16. | | | | | | | |

| SUMMARY | PENSION FUND | | TOTAL HOURS THIS PAGE |
|---|---|---|---|
| 10. TOTAL HOURS OF ALL PAGES | 2084.75 HRS. | | 2084.75 |
| 11. CONTRIBUTION ON TOTAL HRS. | HOURS TIMES RATE IN 4= 1.50 | | |
| 12. ADJUSTMENTS  A. DESCRIP. ANCIES | | | 15. NUMBER OF EMPLOYEES LISTED ON THIS FORM AND CONTINUATION SHEETS |
| B. LIQUIDATED DAMAGES | | | |
| 13. AMOUNT DUE - TOTALS | 3127 .13 | | |

EMPLOYER, BY: _____
AUTHORIZED SIGNATURE
DATE: 1/4/07

ADMINISTRATOR'S COPIES TO ACCOMPANY YOUR REMITTANCE

9. TOTAL HOURS THIS PAGE 2084.7

**NOTICE TO EMPLOYER:** One copy of this form will be mailed to you each month. This form must be the 1st page of each monthly report you file. If you cannot list all employees on this sheet, then list additional names on a Continuation Sheet which has been supplied to you. Attach Data Processing list. **CAUTION** — A report filed on a Continuation Sheet without this form as a 1st page is not acceptable.

EXHIBIT NO. 6-5
PAGE NO. 127

RETAIN FOR YOUR FILE

# CARPENTERS LABOR-MANAGEMENT PENSION FUND

Administrative Office — 1300 S. MERIDIAN, SUITE 200 OKLAHOMA CITY, OK 73108-1751

EMPLOYERS MONTHLY REPORT TO TRUSTEES

| | | | | |
|---|---|---|---|---|
| **URGENT** | AN EMPLOYER MUST FILE THIS REPORT EACH MONTH EVEN THOUGH NO COVERED EMPLOYEES WERE EMPLOYED. | 0004702 | | IF NO COVERED EMPLOYEES WERE EMPLOYED DURING THE MONTH, CHECK HERE ▶ ☐ |
| **IMPORTANT** | THIS REPORT IS DUE ON THE 15th OF EACH MONTH AND MUST BE RECEIVED NOT LATER THAN THE 25th TO AVOID LIQUIDATED DAMAGES FOR DELINQUENT REPORTING. | **FINAL REPORT** ☐ | | NOTE: IF THE PERIOD REPORTED BEGINS MORE THAN 5 DAYS PRIOR TO THE 1ST OF THE MONTH OR EXTENDS 5 DAYS BEYOND THE LAST DAY OF THE MONTH, YOU WILL BE EXPECTED TO FILE A NEW REPORT. |

EMPLOYERS NAME AND ACCOUNT NO. AS REGISTERED IN ADMINISTRATIVE OFFICE

ACCOUNT NO. 0004702
0051A

FREEMAN CARDER
20 SUN STREET
WALTHAM MA 02453-

2. THIS REPORT IS TO COVER MONTH OF: JAN. 2007

3. PAY PERIOD COVERED BY THIS REPORT

4. RATE OF EMPLOYERS CONTRIBUTION 1.50¢

PLAN

14. **IMPORTANT NOTICE**
THIS REPORT SHOULD BE ACCOMPANIED BY CHECK PAYABLE TO:
CARPENTERS LABOR-MANAGEMENT PENSION FUND
SEND CHECK WITH ADMINISTRATOR'S COPIES TO:
CARPENTERS LABOR-MANAGEMENT PENSION FUND
1300 SO. MERIDIAN, STE 200
OKLAHOMA CITY, OK 73108-1751

LOCAL NUMBER 000051   PAGE 0001OF   PGS.

| NAME OF EMPLOYEE | 6. SOCIAL SECURITY NO. | 7. HOURS PAID DURING WEEKLY PAY PERIOD | | | | | 8. TOTAL PER MAN PER MONTH |
|---|---|---|---|---|---|---|---|
| TIALS 1st 2nd LAST NAME | | FIRST WEEK | SECOND WEEK | THIRD WEEK | FOURTH WEEK | FIFTH WEEK | |
| MOLT, JOHN | -1911 | | | | | | |
| MILLER, SR | -0408 | 40 | 52.5 | 43.75 | 52 | 46.5 | 234.75 |
| CARRETTA, ENZ. | -0630 | 36 | 32.5 | 34.25 | 43.75 | 39 | 185.5 |
| MILLER, DAVID | -7954 | 33.25 | 43.75 | 36.25 | 42.5 | 44 | 198.75 |
| CORZI, LOUIS | -7811 | 40 | 46 | 31.75 | 36.5 | 44 | 198.25 |
| LAGUMINA, GIOVANN | -5766 | 40 | 48.5 | 52 | 54.5 | 54.75 | 249.75 |
| DE FRANCO, ROBERT G | -2777 | 39.5 | 40 | 41 | 32 | 40 | 192.5 |
| MELECES, FRANCIS A | -9971 | 32 | 56 | 49.75 | 55.5 | 49.25 | 242.5 |
| MINASI, ROCCO | -9055 | 40 | 39.5 | 40 | 33 | 42.5 | 195 |
| BONILLA, ROBERT J | -8759 | 40 | 40.25 | 41 | 47.5 | 45.5 | 214.25 |
| RINACO, ANTHONY | -0924 | 40 | 49 | 44 | 37.5 | 48.5 | 219 |
| MONAHAN, PETER E | -6715 | 40 | 46.75 | 46 | 35 | 36.75 | 204.5 |
| PAQUETTE, JOSEPH J | -3430 | 40 | 50 | 47.5 | 47.5 | 47.5 | 232.5 |
| Dacruz, VICMANO | -2319 | 40 | 46 | 46.5 | 54 | 50.25 | 236.75 |
| | | | | | | | |
| | | | | | | | |

CORRECT SOCIAL SECURITY NUMBER MUST BE SHOWN

| | SUMMARY | | PENSION FUND | | 9. |
|---|---|---|---|---|---|
| | 10. TOTAL HOURS OF ALL PAGES | 2804 | HRS. | | **TOTAL HOURS THIS PAGE** 2804 |
| | | | HOURS TIMES RATE IN | | |
| | 11. CONTRIBUTION ON TOTAL HRS. | 4= | 1.50 | | |
| EMPLOYER, BY: | 12. ADJUSTMENTS & DISCREPANCIES | | • | | 15. NUMBER OF EMPLOYEES LISTED ON THIS FORM AND CONTINUATION SHEETS |
| AUTHORIZED SIGNATURE | & LIQUIDATED DAMAGES | | • | | |
| DATE: | 13. AMOUNT DUE- TOTALS | | 4206 .00 | | EXHIBIT NO. 6-6 |
| ADMINISTRATOR'S COPIES TO ACCOMPANY YOUR REMITTANCE | | | | | |

NOTICE TO EMPLOYER: One copy of this form will be mailed to you each month. This form must be the 1st page of each monthly report you file. If you cannot list all employees on this sheet, then list additional names on a Continuation Sheet which has been supplied to you. Attach Data Processing

128

**FREEMAN CARDER**
Delinquency

| Work Month | First Date Contrib Delinquent | Last Month of Interest to be Calc | Contribution Due | Number of Days Delinquent | Interest | Interest Due | Liquidated Damages 20% |
|---|---|---|---|---|---|---|---|
| August 2006 | September 15, 2006 | March 31, 2007 | $ 4,086.75 | 197 | 18.00% | $ 397.03 | $ 817.35 |
| September 2006 | October 15, 2006 | March 31, 2007 | $ 3,475.50 | 167 | 18.00% | $ 286.23 | $ 695.10 |
| October 2006 | November 15, 2006 | March 31, 2007 | $ 3,796.88 | 136 | 18.00% | $ 254.65 | $ 759.38 |
| November 2006 | December 15, 2006 | March 31, 2007 | $ 3,048.38 | 106 | 18.00% | $ 159.35 | $ 609.68 |
| | | | | | | | |
| January 2007 | February 15, 2007 | March 31, 2007 | $ 4,206.00 | 44 | 18.00% | $ 91.26 | $ 841.20 |
| February 2007 | March 15, 2007 | March 31, 2007 | $ 3,238.88 | 16 | 18.00% | $ 25.56 | $ 647.78 |
| | | | | | | | |
| *December 2006 | January 15, 2007 | March 31, 2007 | $ 3,127.13 | 75 | 18.00% | $ 115.66 | $ 625.43 |
| | | | | | | | |
| | | | $ 21,852.39 | 666 | | $ 1,214.08 | $ 4,995.90 |

**CONTRIBUTIONS DUE:** $ 21,852.39

**INTEREST DUE:** $ 1,214.08

**AUDIT FEES:** $ 1,998.44

**LIQUIDATED DAMAGE :** $ 4,995.90

**TOTAL CONTRIBUTIONS, INTEREST AND AUDIT FEES DUE:** $ 30,060.81


EXHIBIT NO.
PAGE NO.
130
7

Interest per day:     $     1.8229

*Does not include December contributions and interest.